## Wilson, et al. v. Wilson, et al.

(Decided May 7, 1920.)

## Appeal from Hopkins Circuit Court.

1. Wills—Admission to Probate.—There being no evidence of undue influence or mental incapacity an instrument which is in the handwriting of deceased and clearly indicates her desires as to how her property should be divided among her children upon her death was properly admitted to probate, even though not in the terms usually employed.

2. Wills—Admission to Probate.—Fraudulent or unconscionable acts on the part of certain children in suppressing the instrument for a long time after the death of deceased, and accepting larger interests in the estate than they owned under the will, cannot affect the character of the instrument as a will and its probation will not be denied because of such acts.

3. Wills—Admission to Probate—Attorneys' Fees.—Where six of the children of decedent, acting in their individual capacities and as beneficiaries offered the will for probate, and two children contested the will, it was error to allow the attorneys' fee for the propounders to be taxed as costs against the estate.

GORDON, GORDON & MOORE for appellants.

COX & GRAYOT and GORDON & HOPEWELL for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing in part and affirming in part.

Mrs. Lelia Wilson, a widow, died on March 20, 1913, the owner of an undivided three-fourths interest in a tract of land containing about one thousand (1,000) acres, known as the Pond river farm, and the sole owner of another farm, known in the record as the Crenshaw property. She was survived by six sons and two daughters. Shortly after her death, by agreement made among her children, two of them, Earl and Miss Lelia, were appointed administrators of her estate, and they proceeded to administer upon the personal property in the belief and as though their mother had died intestate. Later they made a final settlement of their accounts as administrators and were discharged as such.

Five of the children sold and conveyed their undivided interest in their mother's real estate to one W. J. Ruby, who in turn conveyed same to G. S. Hollingsworth, Jr., and one of the daughters, Mrs. McLaughlin, acquired

the interests of the other children therein. Thereafter, on July 1, 1918, the following instrument was offered for probate in the county court as the will of Mrs. Wilson, by six of her children:

"I have paid W. L. Wilson and wife their interest at my death, and they are no longer heirs in any part of my estate, nor can they claim anything more after my death.

"Also my son, D. T. Wilson and his wife, the same as above mentioned.

"My son, Mun Wilson, has the equivalent of the above in town (Madisonville) values that were part of the estate, he does not have any interest in what is known as the Crenshaw farm, but has one-sixth interest in the Pond river land his father left.

"Bradley, Earl, Lelia and Ermine have contributed to keep up the farm—buy stock—hire hands, &c. Their interest in both places remain until they see proper to change it.

"Given Wilson has equal interest with Bradley, Earl, Lelia and Ermine in both pieces of property. Should he never return or claim it, after a certain length of time (to be decided by the court) his part to be equally divided between the others.

"Lelia and Ermine hold my note for $5,000.00 money I borrowed from them to settle all indebtedness of their father and buy the Crenshaw property.

"Their aunt, Mrs. Eliza Rash, willed them $1,000.00 (one thousand dollars) each and willed me the same.

"Several years previous to her death Mrs. Rash gave the girls $1,000.00. I was their guardian jointly with their father—that money was used and not paid—or put to their credit or made safe to them in any way. Through a transaction with Roy Ramsey (which the record in the clerk's office will establish) I turned my bequest from Mrs. Rash to my daughters to pay them their money used by their father, thus enabling them to pay $3,000.00 for a piece of town property from Roy Ramsey, which they subsequently sold to Charlie Lindsay for $5,000.00, which amount I borrowed and paid all indebtedness of their fathers.

"MRS. LELIA WILSON."

The two remaining children, W. L. and D. T. Wilson, and Ruby and Hollingsworth contested the probation of the instrument as the will of Mrs. Wilson, upon the

grounds that it was not testamentary in character; that its execution was procured by undue influence and that Mrs. Wilson did not have testamentary capacity. Upon trial in the county court the will was sustained and admitted to probate, and from that judgment the contestants appealed to the circuit court, where, upon trial by the court, a jury having been waived, the instrument was again sustained as the will of Mrs. Wilson, and from that judgment the contestants have prosecuted this appeal.

There was no evidence whatever of undue influence or mental incapacity, and it is admitted that the instrument is wholly in the handwriting of Mrs. Wilson. Hence, the only question involved is whether the instrument is testamentary in character.

As stated in 40 Cyc. 1091, "It is not necessary that any particular form of words be used to make a will. The books abound in cases in which informal instruments have been admitted to probate. To constitute such an instrument all that is necessary is that it should clearly appear to be the intention of the party to have it operate after his death and not before. Any writing to take effect at death may constitute a will."

To the same effect are Jackson v. Jackson's Administrator, 6 Dana 258; Knott's Administrator v. Hogan, 4 Met. 99; Milam v. Stanley, 111 S. W. 296; Pelley's Admr., et al. v. Earl, et al., 107 Ky. 640; Webster, et al. v. Lowe, et al., 107 Ky. 293, and Morrison, et al. v. Bartlett, 148 Ky. 833.

In most of the above cases the testamentary character of the instrument admitted to probate as a will was very much more doubtful than is the instrument now before us. While Mrs. Wilson did not employ the usual terms, she nevertheless clearly indicated her purpose to declare how, upon her death, her property should be divided among her children. She provided that W. L. and D. T. Wilson were no longer heirs in any part of her estate, and were not to claim anything more after her death; that her son, Mun Wilson, had received sufficient from her to exclude him from any interest in the Crenshaw farm, but that he was to have a one-sixth interest in the Pond river farm. Her son, Given Wilson, had not been heard from for many years, and she provided that he was to have his equal interest should he return to claim it, but if he did not return his part was to

be equally divided among the other children, Bradley, Earl, Lelia and Ermine, who were not to be charged with any advancements. She further acknowledged an indebtedness to her two daughters in the sum of $5,000.00, and explained how they had acquired this sum, and for what purpose she had borrowed it from them.

It will thus be seen that she mentioned every one of her eight children, and explained fully the extent to which each was to be interested in her estate after her death, and gave her reasons therefor. That this was intended by her as her will is too clear, we think, to admit of serious argument. In fact, counsel for appellants do not seriously argue that the instrument is not testamentary in character, and they cite no authorities whatever to that effect, but they earnestly insist that its probation should have been denied upon the ground of alleged fraudulent and unconscionable acts upon the part of some of the Wilson children, especially Bradley, in suppressing the instrument for so long a time after the mother's death, and in the meantime selling and receiving payment for larger interests in the estate than they owned under the will. It is apparent, however, that nothing that her children may have done since her death can alter the character of the instrument Mrs. Wilson executed in her lifetime, and in this action only the character of that instrument is involved.

2.    Objection is also made to the allowance of a fee of $800.00 to the attorneys for the propounders for their services in the probation of the will. The will was not offered for probate by any executor or administrator, nor was any one authorized to act in such fiduciary capacity at the time the will was offered for probate. The administrators who had theretofore been appointed had made final settlement of their accounts and had been discharged. Even if this were not true, the administrators who were appointed, in the belief that the decedent had left no will, under section 3897 of the statute, would have been deprived of their power to act as such by the production and proof of this will. The will was offered for probate by six of the children, not in any fiduciary capacity, but purely in their individual capacities, and as beneficiaries under the will. The contestants were represented by counsel of their own choosing whom they will have to pay, and under these circumstances it would be extremely inequitable, we think, to require them to

help pay the attorneys who represented only the interests of their adversaries.

It is made the duty of an executor, by statute, to probate the will of his testator, and because of this duty imposed upon him by law, it has been held by this court that he is entitled to have allowance made to his attorney to be taxed as costs and paid out of the estate for services rendered in probating the will. For the same reason, and by analogy, a fee has been allowed and taxed for the attorney of an administrator with the will annexed under similar circumstances. Phillips' Exr. v. Phillips' Admr., 81 Ky. 334; Gilbert v. Bartlett, 9 Bush 48, and Sims, et al. v. Birdsong's Admr., et al., 21 Ky. Law Rep. 76.

So far as we have been able to ascertain, no such fee has ever been allowed under the circumstances of this case. The parties here were acting in their individual capacities, and for themselves, and even though all may be considered to have a joint interest in the subject matter of the litigation, and interested in a way in the probation of the will, the facts of the case, in fairness to all parties, seem to bring it within the rule which exempts parties who have employed attorneys to represent them from contributing to the fee of the attorneys who represent their adversaries.

For the reasons indicated, the judgment is affirmed in so far as it sustained the will of Mrs. Wilson, but reversed to the extent that it allowed a fee to the attorneys for the propounders to be taxed as costs against the estate.