Argued January 10; modified February 26; opinion modified on rehearing September 24; rehearing denied December 10, 1935

IN RE SHEPHERD'S ESTATE

## ALLINGHAM *v.* BOSE
(41 P. (2d) 444, 49 P. (2d) 448)

*W. B. Shively*, of Portland (Henry Bauer, of Portland, on the brief) for appellant.

*Robert G. Smith*, of Portland (Frank E. Manning, of Portland, on the brief) for respondent.

CAMPBELL, C. J. Plaintiff and William H. Shepherd intermarried on February 9, 1922. Mr. Shepherd died testate on November 5, 1923, without issue. At the time of his death he owned real property consisting of a ranch near Albany, Linn county, Oregon, valued at $13,505, and an interest in some lots in Albany, which were later valued at $250, and personal property consisting of cash, notes and securities of the appraised valuation of $6,871.40.

The will read as follows:

"I, W. H. Shepherd, being of the age of 67 years and of sound and disposing mind, memory and understanding and not acting under duress, fraud or the influence of any person whomsoever, do make, publish and declare this to be my Last Will and Testament, hereby revoking any and all former wills by me made;

*First*—I direct that all my debts and expenses of my funeral and last illness be paid as soon as possible out of my personal estate;

*Second*—I have heretofore executed and delivered in escrow for my nephew, William D. Allingham, three deeds covering all my ranch and farming property located in Linn County, Oregon, it being my intention, which I hereby reiterate, that said real property shall go to my said nephew, William D. Allingham, upon my death; and if said deeds are for any reason ineffective to carry out this intention, I hereby will and devise all of said real property to my said nephew, William D. Allingham;

*Third*—Subject to the foregoing, I give, will, devise and bequeath to my nephew, William D. Allingham, all of the rest, residue and remainder of my estate, real personal and mixed, wheresoever situated of whatso-

ever kind or nature of which I may die seized or possessed or in which I may have any interest, legal or equitable, at the time of my death, in trust, however, for the uses and purposes and with the powers hereinafter set forth, with full power to receive, from my executor hereinafter named the same in such securities as it shall be invested in at the time of my death, or by my executor, with full power to sell the same or any part thereof and invest or reinvest the same or any part thereof and to change and vary the investment from time to time as he may deem best. From said trust estate and the income thereof, the said trustee shall pay to my wife, Olive M. Shepherd, the sum of Four Hundred ($400.00) Dollars each six (6) months for the balance of her natural life, unless this trust estate shall be sooner exhausted; and provided, further, that if the said Olive M. Shepherd shall remarry after my death, then the payments herein provided to be made to her shall thereupon immediately cease. The said payments are to be taken by my wife in lieu of her dower interest in any real estate of which I may die seized;

*Fourth*—If any of said trust estate shall remain after the death of my wife, Olive M. Shepherd, or after her re-marriage, in case she should remarry after my death, and the aims and purposes of the aforesaid trust shall have been fulfilled and completed, then any such balance or remainder of said estate, together with the income thereof, shall be paid to my nephew, William D. Allingham;

*Fifth*—I hereby nominate and appoint my nephew, William D. Allingham, as executor of this my Last Will and Testament, and I hereby especially direct that no bond or undertaking be required of him by any court or judge in order that he may be entitled to act as such executor or as trustee aforesaid.''

The will was properly executed in the presence of two witnesses.

On November 10, 1923, a petition for the probate of the will was duly filed and on November 13, 1923, the probate department of the circuit court for Mult-

nomah county admitted the will to probate and issued letters testamentary to William D. Allingham, defendant herein, who thereupon qualified as executor. On February 6, 1924, Olive M. Shepherd filed her petition for widow's allowance in the sum of $300 per month. On March 19, 1924, the said court allowed Mrs. Shepherd the sum of $225 per month for support and maintenance for the period of one year from the date of the filing of the inventory. The order also provided that the support money should be in addition to the amount set forth in the will of deceased for the benefit of the widow, or in addition to the dower rights of the widow provided she elected to take the dower and not take under the will. The widow failed to elect to assert her dower right in lieu of the provision under the will.

After one year's allowance had been paid, the widow, Olive M. Shepherd, filed a suit contesting the will, asking that the same be set aside and she be declared the sole heir at law. The complaint alleged undue influence, mental incapacity and various other grounds. The will was thereupon probated in solemn form. From a decree declaring the will to be valid, the plaintiff appealed to this court where the decree of the lower court was affirmed. (*In re Will of Shepherd,* 121 Or. 619 (256 P. 1119)).

Immediately thereafter, the widow, Olive M. Shepherd, filed a suit against said Allingham alleging that she and the deceased had entered into an oral antinuptial agreement to the effect that if he would not make a will and if, at his death, plaintiff should survive him, and become his sole heir at law, she would marry him and nurse and provide for him; that she relied on said proposal and accepted same and married him, and fully performed her part of the contract. From an

adverse decision of the lower court, plaintiff appealed to this court where the decree was affirmed. (*Shepherd v. Allingham,* 132 Or. 684 (288 P. 210)).

On December 4, 1930, Allingham as executor filed his final account. On December 29, 1930, Mrs. Shepherd filed various objections thereto. She objected to several items among which were Item No. 12, the amount paid the court reporter in *In re Will of Shepherd,* supra, the will contest, $435.75, for a transcript of testimony; Item No. 14, $250 attorney's fees to Henry Bauer as attorney for the executor; Items Nos. 17 and 23, $350 and $1,150 attorney's fees in the will contest suit, alleging that $750 would be reasonable and sufficient; Item No. 27, $519.88 for fees of the executor; and Item No. 28, $250 additional attorneys' fees. These were the only objections that respondent raised to said final account at that time. These were the issues on her part to be determined by the court.

As a result of these objections being filed, a hearing was had January 8, 1932, at which hearing Mrs. Shepherd amended her objections to the final account by adding a paragraph objecting to the payment of the sum of $2,700, previously paid to her as widow's allowance, out of the personalty of the estate and sought to have the payment of that sum made a charge on the real property of the estate.

On January 15, 1932, Allingham as an individual, filed his objection to the court's allowance of $2,700 for the widow's support on the ground that the same was excessive, alleging that no sum "in excess of $800" should have been allowed for her support. He further contended that no part of any sum paid to the widow as allowance should come out of the real estate.

On February 1, 1932, a further hearing was had on said final account.

On December 31, 1932, a decree was rendered settling the final account; reducing the amount theretofore allowed the widow for one year from $225 per month to $75 per month; that the sums paid to the widow in excess of $75 per month for said period of one year should be considered as part of her annuity under the will; that all the widow's objections to the final account be overruled; that the administration was completed and directed that as soon as certain of the probate proceedings be placed of record in Linn county the estate be closed and the executor discharged. This order having been complied with, on January 19, 1933, the court made an order closing the estate.

On June 6, 1932, the widow married a Mr. Bose and on January 27, 1933, as Mrs. Bose, filed a motion to vacate the decree of December 31, 1932. On November 28, 1933, the court made the following order:

"The motion of the widow of the deceased, Olive M. Shepherd, now Olive M. Bose, for the vacation of the order made by this court approving the final account of the executor and purporting to reduce the widow's allowance for support made and entered by the court on December 31, 1932, came on for hearing on this 24th of March, 1933, * * *

"And it appearing to the court that this court made an order on the 19th day of March, 1924, granting the widow an allowance of $225.00 per month for one year, and that no appeal was taken from said order, and that the final account of the executor shows that in pursuance of said order he paid the widow the sum of $2,700, and that no notice of any motion to modify the said order fixing the widow's allowance was ever given to or served upon the widow, Olive M. Shepherd, and no hearing was ever had upon any such motion, and it further appearing that the court inadvertently signed an order overruling the objections to the final account of the executor which purports to reduce the widow's allowance long since paid by the executor from $225.00

to $75.00, and the court being of the opinion that the order of the court reducing said widow's allowance from $225.00 to $75.00 was made without jurisdiction of the person of the widow, or the subject matter of the widow's allowance, and it further appearing that the approval of the executor's final report shows the widow was paid $2,700.00 by the executor, and that the executor is given credit for said sum as paid to the widow, and a reduction to $75.00 per month at this time would be repugnant to the credit given the executor for $225.00 per month as taken by him in his final account; and it further appearing to the court from the will, inventory, and the final account, and the admissions of the attorneys for the executor, that William H. Shepherd, deceased, by his will bequeathed to William D. Allingham (also named as executor) as trustee of all of his estate except two farms in Linn County, Oregon, to secure the payment of an annuity of $800.00 per year to his widow, Olive M. Shepherd, in lieu of her dower in the lands of which he died seized, until she should marry and while she lived, subject only to expenses of last illness and funeral expenses, which amounts to $574.00.

And it further appearing from the inventory filed by the executor, that he received as assets of the estate other than the farms in Linn County, Oregon, of the appraised value of $7,121.40, of which $6,871.40 was the value of personal property and $25.00 was the appraised value of one-half interest in Albany lots; and it further appearing from Exhibit "A" in the final report of the executor that he has disposed of personal property devised to him as trustee for which he received the sum of $6,309.12, and that the executor has used the said moneys so received by him from the property devised in trust, except the Albany lots, for the payment of taxes, expenses of administration, and attorney's fees in the sum of $5,735.12, and that the use of the property devised in trust for that purpose was wrongful and unlawful, and whereas the court in making the order of December 31, 1932, inadvertently approved the use of the moneys realized from the property devised to William D. Allingham as trustee, which the court was

without authority or jurisdiction to make concerning any of the property devised in trust, and whereas the executor has failed by his report to show that he has made any distribution of the property devised in trust to himself as trustee.

It is hereby ORDERED that the order entered at Page — Volume — of the Journal of this court, made December 31, 1932, approving the executor's final account and discharging him from his trust, be and the same is hereby vacated and set aside, and the executor is hereby directed to file a further final account showing what property he received as executor that was and should be distributed to William D. Allingham as trustee under the will of William H. Shepherd.''

From this order defendant appeals.

█ The contention of appellant is that the court had no power to set aside its order of December 31, 1932, for the reason that the term of the court at which it was made ended on that date. In the instant case, the court still retained jurisdiction over the parties and the subject matter. The executor was not discharged by said order. It required of him the performance of certain other duties before he should be relieved of his trust. The order finally closing the estate was not made until January 19, 1933, being the January term of said court. The motion to vacate the order settling the final account and opening up the estate for further consideration was made in the same term, on January 27, 1933. The court had authority to take such motion under consideration and pass upon the same at such time thereafter as the court should be fully advised upon the matter. While the probate court retains jurisdiction over the subject matter it has full power, on due notice to the parties, to make such orders as are necessary to the proper administration of the estate or the carrying out of the terms of the will of the testator. The circuit court

of Multnomah county in probate matters sits as a court of equity. The provisions of the statutes relative to new trials and motions to set aside judgments, etc., do not apply to courts of equity: Oregon Code 1930, § 6-107; *Mannix v. Harju,* 125 Or. 258 (266 P. 238); *Lachele v. Oregon Realty Exchange Investment Company,* 121 Or. 582 (256 P. 646); *In re Seidel's Estate,* 64 Or. 321 (130 P. 53). The court committed no error in vacating its said order.

However the court, in making its said order, made certain recitals on issues which were not raised either by the motion or by objections to the final account. It will be observed that the order reads:

"It is hereby ordered that the order * * * made December 31, 1932, * * * be and the same is hereby vacated and set aside, and the executor is hereby directed to file a further final account showing what property he received as executor that was and should be distributed to William D. Allingham as trustee under the will of William H. Shepherd."

We deem it advisable, in view of the recitals in said order of vacation, to state that there is no issue raised that the final account does not state the facts as to the receipts and disbursements of the trust fund under the will, and the only questions to be determined are those raised by the objections filed thereto as to whether such items are or were proper expenditures from said fund under the will.

The first objection is to the Item No. 12 in the sum of $435.75 for a transcript of the evidence in the cause of *In re Will of Shepherd,* supra. There is no complaint that it is too large or that it has not been paid, and, as the respondent instituted the contest, the claim should be paid out of the trust fund and the item allowed as a proper expenditure by the executor.

■ Respondent then objects to Item No. 14, $250 attorney's fees for the executor. This objection is not well taken. Assuming that $500 is a reasonable attorney's fee to be allowed the executor, and the evidence is to that effect, $250 would be a reasonable sum to be paid from the personalty that the executor held in trust.

■ The respondent then objects to Item No. 17, $350 attorney's fees, and Item No. 23, $1,150 balance of attorney's fees in the case of the will contest. She suggests that $750 would be a reasonable amount to be allowed in said account. These two items make a total of attorney's fees allowed in *In re Will of Shepherd,* supra, of $1,500. Two credible expert witnesses testified that $2,000 would be a reasonable fee for the handling of said case. In view of this evidence and the further fact that respondent was the one who caused the executor to incur this expense that it was expended in defending the trust fund, we are of the opinion that, under the peculiar facts of the instant case, that sum should be charged to the trust fund.

■ She then objects to Item No. 27, $519.88, executor's fees. We are of the opinion that this objection is well taken. The personal property was devised to the executor as a trust fund from which certain allowances were to be made the widow in lieu of dower. The widow having accepted this provision, she became a purchaser for value and was entitled to be protected to the full extent of the sum provided by the testator's will.

"Where a testamentary gift is made by a husband to his wife in satisfaction of her waiver of dower in his estate, the gift has a preference over all other unpreferred legacies, and will not abate with other specific legacies upon a deficiency of assets. It will even be given preference to specific devises. The theory is that a legacy in lieu of dower is based upon a valuable con-

sideration with the same standing as a creditor. It is immaterial that the legacy given to the widow may exceed the value of the dower, as the testator is the best judge of the price at which he will purchase the relinquishment of the dower." 28 R. C. L. 304.

■ And where the estate consisted of other property in addition to the trust fund, the compensation of the executor should come from such other property when there were insufficient funds in the trust fund to fully carry out the trust.

She further objected to Item No. 28, $250 for the balance of attorney's fees. We have already covered this in relation to Item No. 14 and her objection to this sum is well taken.

■ On the first hearing on the final account, January 8, 1932, the widow filed a further objection to Item No. 6, $1,125, and Item No. 7, $1,575. These two items totaling $2,700, being the amount paid by order of the court as the widow's allowance for one year. She objected to this amount being charged against the personalty held in trust by the executor. To this item, William D. Allingham, as the devisee of the real property, also objected as being excessive. This item the executor paid by order of the court as the widow's allowance: Oregon Code 1930, § 11-403. The question presented is whether this sum should be charged to the trust fund. In the first place the order of allowance states that:

"It is, now, THEREFORE, ORDERED AND ADJUDGED by this Court that there will be and hereby is set apart out of the property of said estate independent of the trust fund mentioned in the will of the decedent for the support and maintenance of the widow of the deceased, Olive M. Shepherd, the sum of $225.00 per month for the period of one year from the date of the filing of the inventory of said estate, to be paid by the executor William D. Allingham to the said widow of

the deceased monthly during the said period, provided, however, that said allowance shall be in addition to the amount set forth in the will of the deceased for the benefit of the said widow, or in addition to the dower right of said Olive M. Shepherd providing she elects to take the dower and not take under the will.''

This order was made March 19, 1924, and the objection by the executor, made January 15, 1932, comes too late. Such objection was not made within a reasonable time and it would seem that even if well taken it would be ineffective as the court could not compel the widow to refund any part of what has been paid to her.

''Upon an application within a reasonable time an order of the court may be made modifying or revoking a former order of allowance, but such an order cannot be made retroactive in its effect or to require the widow to account for any portion of what she may have already received or expended. It has been held that no appeal lies from an order discontinuing an allowance to a widow. Where upon showing a change in the condition of the estate or the circumstances of the widow, a reasonable reduction or stoppage appears justified, all further property will fall into the general personal estate as assets.'' 24 C. J. 272, § 871.

The decree of the circuit court will therefore be modified, and the cause remanded with instructions to enter a decree settling the final account not inconsistent herewith. Neither party will recover costs in this court. It is so ordered.

BEAN and RAND, JJ., concur.

---

BAILEY, J. (dissenting in part). The same reasoning which actuated the court in sustaining the widow's objection to the allowance of the payment of any part of the executor's fee from the trust fund created by the decedent for the benefit of the widow is equally

applicable to her objection to paying from that fund attorney's fees incurred in the ordinary administration of the estate.

The item of $500 in the final account for attorney's fees does not in any way relate to the additional expense to the estate created by the widow in the litigation instigated by her. If the widow is "entitled to be protected to the full extent of the sum provided by the testator's will" in lieu of dower, she is as much entitled to have the fees of the attorney employed by the executor in the ordinary administration of the estate paid from assets of the estate, other than the trust fund, as she is to receive the full trust fund, undiminished by any part of the executor's fees. The charge for legal advice and service, if allowable at all, is a part of the necessary expense incurred in the care, management and settlement of the estate: § 11-709, Oregon Code 1930. No part of the $500 allowed for attorney's fees should be charged to the fund provided for the widow in lieu of dower. I, therefore, must dissent from so much of the opinion as charges to the widow one-half of these fees.

---

Former opinion modified on rehearing September 24, 1935

ON REHEARING
(49 P. (2d) 448)

BAILEY, J. A rehearing was granted in this matter, based upon petitions of both the appellant and the respondent. The statement in the former opinion contains all the facts in the case, and only brief reference to them will here be necessary.

The appellant contends that all the debts of the decedent, the ordinary expenses of administration, the

allowance given the widow during the first 12 months of administration, and the costs, including attorneys' fees, in (1) the widow's contest of the will and (2) her suit to have a trust declared in her favor in respect to the real and personal property of the estate, should be paid out of the property of the estate other than the farm lands specifically devised to Allingham. The respondent takes the position that all the expenses and disbursements, other than the debts of the decedent and the expenses of his last illness and funeral, should be made a charge against the real property specifically devised to testator's nephew, Allingham.

The first numbered paragraph of the will directs that all the debts of the decedent and the expenses of his last illness and funeral be paid out of his personal property. In the second paragraph the testator refers to the fact that he had executed and delivered in escrow for his nephew, William D. Allingham, who is also the executor named in the will, three deeds covering his "ranch and farm property located in Linn county, Oregon, * * * it being my intention, which I hereby reiterate, that said real property shall go to my said nephew upon my death; and if said deeds are for any reason ineffective to carry out this intention, I hereby will and devise all of said real property to my said nephew, William D. Allingham". By the third paragraph of the will it is provided: "Subject to the foregoing, I give, will, devise and bequeath to my said nephew, William D. Allingham, all the rest, residue and remainder of my estate, real, personal and mixed, wheresoever situate, or of whatsoever kind or nature", in trust for the purpose of paying to the testator's widow, the respondent Olive M. Bose, formerly Olive M. Shepherd, the sum of $400 each six months during the balance of her life or until remarriage, "unless

the trust estate shall be sooner exhausted''. This gift in trust for the widow is expressly stated to be in lieu of her dower.

The real property devised to the nephew was appraised at $13,505, the personal property at $6,871.40, and the testator's interest in lots at Albany at $250. In the final account the executor charged himself with the receipt of $6,309.12 in cash. The only debts of the decedent were the expenses of his last illness and funeral, amounting to $574. These latter expenses, it was conceded, should, under the first paragraph of the will, be paid out of the personal property.

There was allowed to the widow by the court for her support during the first 12 months of administration $225 per month, or a total of $2,700.

Within the time allowed by statute the widow initiated a contest of the will, which was determined adversely to her. She then filed a suit to have Allingham, both as executor and as an individual, declared trustee of all the real and personal property of the estate held by him individually and in his capacity as executor, pursuant to an alleged oral contract between the widow and her late husband. The latter suit was also decided against her.

It is the respondent's contention that the provisions of the third paragraph of the will devising and bequeathing ''all the rest, residue and remainder of the estate'' to Allingham for her use and benefit were in lieu of dower and therefore amounted in effect to a contract between the testator and the widow, and that the property constituting this trust can not be diminished in any respect by the expenses of administration, the widow's allowance or other expenses now sought by the executor to have charged against that part of the estate not specifically devised to the nephew.

12. Scribner on Dower, second edition, volume 2, § 59, at page 527, thus declares the rule regarding testamentary provisions in lieu of dower:

"A bequest in lieu of dower, accepted by election, is so far based upon a valuable consideration, that * * * it has priority over other legacies, and will not abate with them. The reason upon which this rule is founded, is thus stated: 'It is the price put by the testator himself upon that right, and which she is at liberty to accept. Her relinquishment of dower forms a valuable consideration for the testamentary gifts. In this point of view she becomes a purchaser of the property left to her by the will. So, on the other hand, the husband offers a price for his wife's legal right of dower which he proposes to extinguish; and if she agrees to the terms, she relinquishes it and is entitled to the price. It is, therefore, a matter of convention or contract between them; and what she thus becomes entitled to receive is not by way of bounty, like other general bequests; but as purchase money for what she relinquishes, and which, consequently, must be paid in preference to other legacies, they being merely voluntary.' "

There appears to be little, if any, dissent from the foregoing statement of the law. The question here involved, however, is: What in fact was the amount of the property given in trust for the widow's benefit, and what was its nature or character? If, as she contends, this gift comprised all the property of the estate other than the farm lands specifically devised to the testator's nephew, after deducting the debts of the decedent and the expenses of his last illness and funeral from the personal property, then it follows that the real property devised to the nephew must be looked to for the payment of the expenses of administration, including the widow's allowance.

The cardinal and familiar rule in the interpretation of wills is to ascertain from the testamentary words,

construed according to their natural meaning, the intent of the testator, and then give effect to that intent, unless prohibited by some positive rule of law. We therefore must determine what was intended by the testator in his use of the words "rest, residue and remainder".

The terms "residue", "rest and residue" and "rest, residue and remainder" appear frequently in wills. In practice they are used interchangeably and are commonly construed to have the same meaning. The courts in defining these expressions have virtually limited their discussion to interpreting the word "residue" where it appears in combination with the other terms above mentioned. Residue is what remains after paying the legacies of the will and the debts and expenses of administration. It includes the whole estate, of every description, left by the testator, subject to all deductions required by law or by direction of the testator: *McDougald v. Low,* 164 Cal. 107 (127 P. 1027) ; *Stevens v. Underhill,* 67 N. H. 68 (36 Atl. 370) ; *Phelps v. Robbins,* 40 Conn. 250; *Quinn v. McDowell,* 47 R. I. 314 (132 Atl. 888) ; *Frelinghuysen v. New York Life Insurance and Trust Company,* 31 R. I. 150 (77 Atl. 98, Ann. Cas. 1912 B, 237) ; *In re Richter's Will,* 212 Iowa 38 (234 N. W. 285) ; *Old Colony Trust Company v. Smith,* 266 Mass. 500 (165 N. E. 657).

This court, with reference to the meaning of "residue" as used in testamentary disposition of property, in *Leahy v. Cardwell,* 14 Or. 171 (12 P. 307), observed:

"As applied to the estates of decedents, residue means all that property which remains after paying charges and debts, and satisfying all the devises and legacies. Blackstone defines it to be the surplus of the testator's estate remaining after all the debts and particular legacies have been discharged. 2 Bl. Com.

514. 'The term "residue"', said Carpenter, J., in Phelps v. Robbins, 40 Conn. 264, 'as used in wills, ordinarily means that portion of an estate which is left after the payment of the charges, debts, and particular bequests.' (Graves v. Howard, 3 Jones' Eq. 302.) It is the proper ascertainment of these, their payment and discharge, which creates the residue and makes it tangible as such, to be held or received by the party authorized to take it, to be enjoyed, used or applied according to the requirements of the will. And under our practice, what such residue is and in what it consists is ordinarily ascertained and determined when the final account is presented and judicially acted upon by the court. This, then, is the point of time to be ascertained from the record when the residue becomes an entity, and when Eloisa Harvey becomes entitled to the use and control of the residue of the property of whatever character.''

There can, of course, be but one residue, that is, what is left after payment of the debts, the specific devises and legacies and the expenses of administration —at least, those expenses ordinarily incident to the probating of an estate. The value, character or description of the residue is in many instances not determinable until the final account is settled.

The respondent, however, contends that the testator did not use the words ''rest, residue and remainder'' in their common and usual meaning, but in a descriptive sense, and as indicating his intention that all his estate other than the real property devised to his nephew should pass to his widow. In other words, the respondent's theory is that she is in the same position as though the testator had specifically stated that he gave to her certain notes, United States bonds and other personal property, describing them in detail.

We are unable to accept the construction which the respondent places on the will. Deeds had been signed

and placed in escrow by W. H. Shepherd and his wife, the respondent herein, conveying certain farm lands to Shepherd's nephew. Fearful lest it be held that there had not been a valid delivery of these deeds, the testator, after referring to them, states that he reiterates it to be his intention "that said real property shall go to my said nephew, William D. Allingham, upon my death; and if said deeds are for any reason ineffective to carry out this intention, I hereby will and devise all of said real property to my said nephew, William D. Allingham". Then, "subject to the foregoing", he makes provision that "all the rest, residue and remainder" of his property shall pass to his nephew, as trustee, for the purposes hereinbefore outlined.

We find nothing in the will to indicate even remotely that the phrase "rest, residue and remainder" should be interpreted otherwise than in its ordinary and generally accepted sense. On the contrary, the testator has expressed, as clearly as words can convey, his intention to devise to his nephew certain lands, unaffected by debts, expenses of administration or charges against the estate, unless the remaining property in the estate is insufficient to pay them.

As already pointed out, the total cash received by the executor was an amount in excess of $6,300. Had the administration of the estate been closed as in the ordinary course of such matters, unaffected by proceedings brought by her, the widow would have received something like $5,000, which probably would have equaled or exceeded the value of her dower interest in the real property. The testator doubtless did not contemplate any protracted litigation. It is not, however, for the court to speculate upon what he might have done if the exact situation which has arisen had been in his mind when he made his will, but to determine the meaning of

the words actually used and to apply that meaning to the facts presented. We therefore hold that all the debts of the decedent and the costs and expenses of administration are chargeable to and should be paid out of that part of the estate not specifically devised to the testator's nephew.

 There is a further question as to what part of the estate should be charged with the allowance of $2,700 to the widow and the expenses, including attorneys' fees, incurred by Allingham either as executor or individually. The widow's petition for a monthly allowance of $300 was granted to the extent of allowing her $225 per month. The will did not provide that the bequest to testator's wife should be in lieu of her statutory right to a widow's allowance during the first year of administration, and therefore it must be presumed that the testator had in mind, when making provision for her, that she would, if she desired, claim such allowance. The purpose of the statutory provision as to allowance is to tide over the widow and children for what might be assumed to be the average period of administering an estate. It is one of the charges incurred in the ordinary administration of an estate.

In *Smullin v. Wharton,* 86 Neb. 553 (125 N. W. 1112), the testator gave to his wife all his personalty, the home property and a lot in Omaha. The rest and residue of the estate he devised to a trustee, to pay out of the same all the expenses of maintaining and administering the trust and to deposit in a bank to the credit of the testator's wife all the net rents, issues and profits derived from the trust property, with the additional provision that the trustee might, on the written request of testator's wife, sell property of the trust estate and either reinvest or deliver the proceeds

thereof to her for her own use. Several matters involved in the administration of the estate and the trust created by the will reached the supreme court of Nebraska, and in the case cited the court was called upon to determine whether or not the lower court had carried out its mandate issued on a former appeal. One of the findings made by the lower court was as follows:

"The 'rest and residue' of the estate, which passed into and constituted the trust estate under the devise to Westerfield, trustee, was that which remained after payment of the allowance made by the county court to the widow, and all debts, specific legacies, and expense of administration, and no part of the sum of $20,700, paid to the said Ida M. Wharton as aforesaid, was paid out of the trust estate."

The plaintiffs therein, who were interested in what might remain of the trust estate after the death of the testator's wife, excepted to this finding, contending that the $20,700 had been paid out of the residue. In discussing the question thus presented, the court said:

"What passed into the trust estate under this devise was the 'rest and residue' of testator's estate, as that term is used in the will. In that sense the residue is the portion left after the payment of charges, liabilities, and particular legacies. Phelps v. Robbins, 40 Conn. 250; Collins' Appeal, 148 Pa. 139, 23 A. 1108. The county court's monthly allowance of $300, a portion of which the widow received, was not a part of the rest and residue within the meaning of the residuary clause of the will, and was therefore not taken out of the trust estate. Crew v. Pratt, 119 Cal. 131, 51 P. 44. It was an expense of administration, and not a part of the residue. Nothing in the will indicates a contrary intention on the part of testator. It follows that, on the face of the mandate containing the direction of this court, the trial court did not err in holding that no part of the $20,-700 received by Mrs. Wharton was paid out of the trust estate."

In the case at bar the $2,700 allowed by the probate judge to the widow was not taken from the trust fund created for her by the testator. The rest, residue and remainder of the estate which would pass into and constitute a part of the trust fund upon the closing of the estate would be that which would remain after the payment of this allowance to the widow. Had she not asked for and received this allowance, a large one in view of the size of the estate, and one entirely out of proportion to the yearly allowance provided for her in the will, the trust fund would naturally be larger than it now is. In our former opinion we stated that the amount of this allowance was not subject to revision at this time, and we adhere to that holding.

In the order of allowance it is provided that the amount thereof is set apart out of the property of said estate independent of the trust fund mentioned in the will and "that said allowance shall be in addition to the amount set forth in the will of the deceased for the benefit of the said widow, or in addition to dower right of the said Olive M. Shepherd, provided she elects to take the dower and not take under the will". It is contended by the respondent that this order specifically charges the real property devised to the nephew with the payment of the $2,700. We do not so construe the order. The payment of the $2,700 to the widow would not affect her right, upon the turning over of the residue to the nephew as trustee, to receive from him $800 per year as long as the trust fund would be sufficient to pay the same, or until her death or remarriage. Undoubtedly that was the purpose of the provisions to which attention has hereinbefore been directed. Had the court intended to make this a charge against the property specifically devised to the nephew, it surely would have so stated in its order. Moreover, any at-

tempt on the part of the probate court, in view of the wording of the will, to make the widow's allowance a charge against the property so devised would have been erroneous and subject to be set aside on this appeal.

After receiving the monthly allowance of $225 for one year, the respondent could have rejected the provision for her in the will and claimed her dower right in the real property of the decedent. She then could have ascertained the approximate value of the residuary estate. She sought, however, by every means conceivable, to acquire all of the estate, rather than to rely on her statutory right.

Coming now to the question of whether the costs and expenses, including attorneys' fees, incurred by the executor in upholding the will against attack, should be paid out of the estate or borne by the beneficiaries under the will, we find a lack of harmony in the decisions of the courts of this country. In some states it is held that no duty is imposed upon the executor named in the will to take any steps to defend it, and that it is the duty of those who claim under the will to bear the cost of any litigation testing its validity. This is based on the theory that the value of the estate itself is in nowise affected by having the will upheld and that the beneficiaries are the parties principally concerned.

In other states it is held that once the will has been probated in common form it then becomes the duty of the executor to defend it against attack, and that any reasonable expense incurred by him in this effort, including attorneys' fees, shall be paid out of the estate. Many decisions allow the executor to charge such expense to the estate if the will is upheld, while others charge the cost to the executor personally if the contestants are successful. In some states statutes provide that the beneficiaries shall be named as defendants in

any contest, and based upon such law the courts hold that the cost of defending the will shall be borne by the beneficiaries individually rather than by the estate. We need not here go into further detail concerning the holding of the various courts, beyond calling attention to annotations accompanying the following cases: *In re Hentges' Estate,* 86 Neb. 75 (124 N. W. 929, 26 L. R. A. (N. S.) 757); *Wilson v. Wilson,* 188 Ky. 53 (221 S. W. 874, 10 A. L. R. 780); and *Butt v. Murden,* 154 Va. 10 (152 S. E. 330, 69 A. L. R. 1048).

With reference to the question of whether or not the services rendered by the executor in defending the will were of value to the estate, the supreme court of the state of Washington in *Re Statler's Estate,* 58 Wash. 199 (108 P. 433), observed:

"The appellant next contends that the respondent's services were without value to the estate, and, hence, since the claim is based upon benefits to the estate, there can be no recovery. Considering the estate as an entity apart from the interest of its beneficiaries, it is probably a legitimate argument to say that it can make no difference whether the property is taken by one set of claimants or by another. But we do not understand that this is what is meant by benefiting the estate. The contest is made by one set of claimants against another, and the benefit derived therefrom inures to the successful claimants, and this we think is the benefit contemplated by the rule".

Standard Encyclopedia of Procedure, volume 26, at page 302, thus treats the matter:

"Most, but not all, authorities agree that after a will has been admitted to probate it is the duty of the executor to use reasonable efforts to maintain it against attack and that if he does so in good faith even though unsuccessful, he should not be personally taxed with the costs and his reasonable expense including attorneys' fees should be allowed out of the estate. His good

faith is made a test of the executor's right to reimbursement, and the matter is one resting in the sound discretion of the court. The fact that the beneficiaries were represented by counsel does not prevent an allowance to the executor, even though they have notified the executor in advance not to employ counsel.''

In the case of *In re Johnson's Estate,* 100 Or. 142 (196 P. 385, 1115), it was said by this court:

''It is very common, in the proceedings for the contest of a will, especially where doubtful questions are settled, to provide for the costs to be paid from the proceeds of the estate. * * * The usual objection to paying costs from an estate in a proceeding to contest a will is where the contestant is unsuccessful and such a provision might tend to promote litigation. Here the situation is different. The will was probated in common form, and it was to the interest of all concerned that the question be finally settled and adjudicated.''

This court further observed, in the instance of *In re Will of Hough,* 120 Or. 223 (251 P. 711):

''It is the duty of an executor to appeal if in good faith he is satisfied that the will has been improperly rejected. The duty is imposed upon an executor or executrix to execute the will of the testator. The executrix is the sole trustee for all persons having an interest therein and the only legal representative of the estate of the deceased.''

██ Under the procedure which has been adopted and followed in this state the duty is imposed upon the executor after the will has been probated in common form to defend it against attack when he has reasonable ground to believe the will valid; and in such instances it has been the common practice of the court to allow to the executor, whether successful or unsuccessful, if he acts in good faith, the reasonable expense incurred in such defense, including attorneys' fees. It

therefore became the duty of Allingham, when the testator's widow instituted a contest, to make an effort to maintain the will. That he acted in good faith is demonstrated by the fact that the will was upheld by the probate court and the supreme court. The fact that he was a beneficiary under the will did not lessen his duty or his right as executor to have such expense paid out of the estate.

William D. Allingham, however, as an individual, was in reality the only one financially interested in having the will upheld. Had the contest been successful, the widow would have taken all the property that belonged to the estate. Based on the theory that the benefit accruing to the estate from maintaining the will is one that inures to the successful claimants, the shares of the beneficiaries under the will should contribute to the expense of upholding it. In the instant case, were the entire expense of the contest to be paid out of the property included in the residuary clause, the whole burden of defending the will would in effect be borne by the widow, the contestant. The nephew, although profiting by having the validity of the will established, would in that case receive his devise entirely free from any contribution to the cost of litigation. In such event the widow would be charged not only with her own attorneys' fees but would be required to pay those of opposing counsel as well.

The fact that the contestant in this case was the residuary legatee should not affect the question of payment of attorneys' fees for defending the will. Had the contest been brought by some one not a beneficiary under the will but claiming as an heir, it would seem that that part of the estate devised by the testator to his nephew should be charged with some of the expense incidental to maintaining the will.

The costs and expenses, including attorneys' fees, incurred by the executor in this contest should be apportioned between the shares of the two beneficiaries under the will, according to the value received by each of them. The basis of such apportionment should be the appraised value of the real property received by the nephew and the amount that remains for the widow's benefit under the residuary clause. In those states which charge such expenses and attorneys' fees to the estate there seems to have been no decision as to whether they should be paid out of the property included in the residuary clause or apportioned among the shares of the beneficiaries.

■ Included in the account of the executor herein is an item of $435.75 paid by him to the court reporter for a transcript of the testimony in the will contest. The record does not disclose whether this item is a part of the costs and expenditures awarded the executor in that proceeding. If so awarded against the contestant, then it should be paid from the property covered by the residuary clause. Otherwise, this should be apportioned as are the attorneys' fees in the will contest.

■ The suit brought by the widow to have a trust declared in her favor was in effect between her and Allingham as an individual rather than as executor. The claim was made therein that he as an individual held title to real property which belonged to the widow under the contract between her and her deceased husband. Allingham in his individual capacity was a necessary party to that proceeding. Costs and expenses, including attorneys' fees, incurred by him in that suit, no matter in what capacity he presumed his defense to be made, should be paid by him and not charged to the estate.

The executor in his final account asks for $1,500 as attorneys' fees for both the will contest and the suit to have a trust declared. In our former opinion we expressed the view that this was a reasonable amount to be allowed. Since, however, we here decide that no claim should be allowed the executor for attorneys' fees in the suit brought by the widow to have a trust declared, the probate court should determine what is a reasonable amount to be allowed as attorneys' fees in the will contest alone.

■ Counsel for the respondent in their supplemental brief on rehearing for the first time call attention to § 10-320, Oregon Code 1930, providing in what cases a widow may be endowed anew. The question thus sought to be raised is not properly here for determination and we therefore refrain from discussing the matter.

Our former opinion in this case is modified to conform to the views hereinabove expressed. The cause is remanded for further proceedings not inconsistent with this opinion. Neither litigant will recover costs.

KELLY, J., not participating.