## ATLANTIC COAST LINE RAILROAD COMPANY v. NORFOLK SOUTHERN RAILWAY COMPANY.

(Filed 8 October, 1952.)

**1. Contracts § 8—**

A paragraph or excerpt from a contract must be interpreted in context with the rest of the agreement.

**2. Indemnity § 2c—Indemnity agreement in this case held not to impose liability for loss not due to indemnitor's neglect or omissions.** .

By written contract, defendant railroad company, in consideration of being allowed to cross plaintiff railroad company's tracks at grade, obligated itself to keep the crossing in repair and to indemnify defendant against loss "arising from or growing out of the omissions or neglect" of the defendant in the construction and maintenance of the crossing. Construing the agreement contextually it is *held* defendant is not liable for damage to plaintiff's train caused by a broken rail which was entirely unexplained and not discovered until immediately after plaintiff's engine had traversed the crossing when such damage was not the result of any neglect or omission of defendant company in the performance of its duty to inspect and maintain the crossing, since under the agreement defendant was not an insurer and may not be held liable for inevitable accident,

latent defect, or act of God. This result obtains even though the word "omissions" be construed as synonymous with "failure" and therefore broader in its scope than the term "negligence."

APPEAL by plaintiff from *Frizzelle, J.,* at February Civil Term, 1952, of WILSON.

Civil action by plaintiff railroad company against defendant railway company to recover for damage to one of plaintiff's trains caused by a broken rail at a crossing where the tracks of the two companies cross, alleged to be due to the failure of the defendant company to maintain the crossing in good condition in accordance with the terms of a special contract between the two companies.

The parties waived trial by jury and submitted the case to the Presiding Judge upon the following agreed statement of facts:

"1. Plaintiff and defendant are both Railroad Companies, engaged in interstate commerce, and both lawfully operate through North Carolina, and their tracks cross each other in Wilson County, North Carolina.

"2. On 27 June, 1906 the plaintiff and Raleigh and Pamlico Sound Railroad Company entered into a contract, in terms and provisions as follows:

" 'ARTICLES OF AGREEMENT made and entered into this 27th day of June 1906 by and between the ATLANTIC COAST LINE RAILROAD COMPANY, a corporation created and existing under and by virtue of the laws of the State of Virginia, party of the first part, hereinafter called the COAST LINE COMPANY, and the RALEIGH AND PAMLICO SOUND RAILROAD COMPANY, a corporation created and existing under and by virtue of the laws of the State of North Carolina, party of the second part, hereinafter called the RALEIGH COMPANY:

" 'WHEREAS, the Raleigh Company desires to construct its main line track so that the same will cross the line of the Coast Line Company at grade at a point South of and near to the Town of Wilson, N. C., and the Coast Line Company is willing to permit such crossing to be constructed, upon the terms and conditions hereinafter set forth;

" 'NOW THEREFORE THIS AGREEMENT WITNESSETH: That for, and in consideration of the sum of one dollar to the Coast Line Company in hand paid by the Raleigh Company, receipt of which is hereby acknowledged, and in consideration of the several covenants and agreements by the Raleigh Company, hereinafter made, and to be kept and performed, it is mutually agreed by and between the parties hereto, to-wit:

" 'FIRST: That the Coast Line Company will grant and does hereby grant to the Raleigh Company the right to construct a single or double track grade crossing, over and across its right of way, land, and its two main line tracks, at a point twenty-six hundred and Seventy (2670) feet

South of the 108 Mile Post of the Coast Line Company, in the County of Wilson, N. C., as indicated in the blueprint hereto attached, as part of this agreement;

"'SECOND: That the plans for such crossing, and the materials employed for its construction and the construction of the culverts which may be necessary to provide for the proper drainage of the said Coast Line Company's roadway and track, shall be submitted to, and in all respects be acceptable to the Engineer of Roadway of the said Coast Line Company.

"'THIRD: That the said Raleigh Company shall, at its own cost and expense, construct the said grade crossing, in accordance with said plans and specifications, providing therefor all rails, frogs, ties, and any and all other materials necessary; the actual work of constructing said crossing to be subject to the supervision of, and satisfactory to the Engineer of Roadway of the said Coast Line Company, or his duly authorized representative.

"'FOURTH: That the said Raleigh Company will, at its own cost and expense, at all times maintain said crossing in good condition, and will from time to time make all necessary repairs and renewals thereto. It is further agreed in this respect that if at any time the said crossing should, in the opinion of the Coast Line Company's representative, require renewals or repairs, that the said Raleigh Company will, upon request in writing from the Engineer of Roadway of said Coast Line Company, proceed to make such repairs and renewals, and if such repairs and renewals shall not have been made or begun within ten (10) days after such notice from the said Coast Line Company, then, and in that event, the Coast Line Company may itself cause the necessary work to be done and renewals to be made, and may thereafter charge the said Raleigh Company with the full cost of the work of repair and renewals, which said charge the Raleigh Company hereby agrees and binds itself to pay.

"'In cases of emergency, the Coast Line Company may make repairs to said crossing, and charge cost of same to the Raleigh Company as aforesaid.

"'It is further agreed by the Raleigh Company that no work of repair shall be done by it on said crossing without first giving written notice to the Engineer of Roadway, or Roadmaster, of the said Coast Line Company, at least twenty-four (24) hours before entering upon said work; that in making any such repairs or doing any work on said crossing, the Raleigh Company will, in all respects, conform to the requirements of the Coast Line Company as to the time and manner of doing said work so as not to impede the trains of the said Coast Line Company.'

(Paragraphs FIFTH, SIXTH, SEVENTH, and EIGHTH are omitted as not being pertinent to decision.)

" 'NINTH: That it shall be the duty of the said Raleigh Company, and it does hereby fully agree and undertake, upon the demand of the said Coast Line Company to pay, make good and fully indemnify the Coast Line Company against all proper claims for loss, injury, or damage, which it, or any of its employees or passengers or any other person or persons may sustain by accident, collision, delay, or hindrance, or from any other cause arising from or growing out of the omissions or neglect of the said Raleigh Company or its agents or employees, in the construction, repair, maintenance, or operation of said crossing or crossings, or in the exercise of any of the rights and privileges granted it hereunder.'

(Paragraph TENTH is omitted as not being pertinent to decision.)

" 'ELEVENTH: That this agreement and all of the terms, stipulations and conditions thereof, shall inure to and be binding upon the respective successors and assigns of the parties hereto.

" 'IN WITNESS WHEREOF (here follows the rest of the attestation clause and other formal parts of the contract showing due execution by the two companies. These parts are omitted as not being pertinent to decision.) . . .'

"3. Prior to September 10, 1949 the defendant succeeded to all of the rights and liabilities of Raleigh and Pamlico Sound Railroad Company under such contract, and the contract was, on September 10, 1949 and still is in full force and effect between the plaintiff and the defendant.

"4. The defendant at its own cost and expense, at all times, exercised reasonable care in maintaining said crossing in good condition, and otherwise exercised reasonable care in discharging fully its obligations under said contract.

"5. At about 6 a.m. on 10 September 1949 plaintiff's northbound passenger train No. 92 passed over said crossing and immediately upon so doing, the Engineer of said train stopped the train, went back to the crossing, where it was discovered that a piece of the west running rail on the northbound track about four (4) inches in length from the end of the west running rail within the crossing was broken off; that the breaking of the piece of rail was through no fault or neglect on the part of the defendant.

"6. In passing over said crossing, the wheels of the plaintiff's Diesel engines and the following cars on the left side of the train struck the broken rail, causing the damage to the wheels of the plaintiff's Diesel units and cars to the extent of $8,809.76.

"7. The defendant, during all the time the said contract was in force, diligently and carefully inspected said crossing, it having made the last such inspection in the afternoon of 9 September 1949, at which time the crossing appeared to be in good condition; if there was any defect in the crossing or in the rail, such defect was not the fault of the defendant, nor

did it occur by reason of any negligence on the part of the defendant, and such defect, if any there was, could not have been discovered by the defendant in its inspection of the crossing on the afternoon of 9 September 1949, by the exercise of ordinary diligence and care.

"8. It is specifically agreed between the parties that the above mentioned rail did not break because of any negligence on the part of the defendant.

"If the Court is of the opinion that the defendant is liable to the plaintiff under the foregoing agreed statement of facts, it will enter judgment against the defendant in the sum of $8,809.76.

"If the Court is of the opinion that the defendant is not liable, it will dismiss the action."

The court, after hearing arguments of counsel, concluded on the facts agreed that the plaintiff was not entitled to recover, and entered judgment so decreeing. From the judgment entered, the plaintiff appealed.

*F. S. Spruill for plaintiff, appellant.*
*Gardner, Connor & Lee for defendant, appellee.*

JOHNSON, J. The single question presented by this appeal is: Does the contract between the plaintiff and the defendant make the defendant liable for damage sustained by plaintiff because of a broken rail, notwithstanding the rail broke through no fault of the defendant?

The plaintiff contends that the contract makes the defendant an insurer and imposes absolute liability. The plaintiff lays stress on the part of paragraph FOURTH of the contract wherein the defendant agrees that it "will at its own cost and expense, at all times maintain said crossing in good condition, and will from time to time make all necessary repairs and renewals thereto." The plaintiff insists that this language creates an absolute covenant, an unconditional promise, that the defendant at all times will maintain the crossing in good condition, irrespective of inevitable accident, latent defect, or act of God.

The plaintiff also points to paragraph NINTH and urges that by its terms the defendant specifically covenants to indemnify the plaintiff against all claims for damage which plaintiff may suffer because of the "omissions or neglect" of the defendant in maintaining the crossing in good repair as required by paragraph FOURTH; that is to say, as plaintiff contends, for omitting to keep the crossing in good repair at all times, at all hazards.

However, when the excerpts from paragraph FOURTH and the provisions of paragraph NINTH, relied on by the plaintiff to support its contention, are considered in context and interpreted with the rest of the contract, as is the rule in cases like this one (12 Am. Jur., Contracts, Sec. 241; *Gilbert*

*v. Shingle Co.,* 167 N.C. 286, 83 S.E. 337), it is apparent that these sections take on different meaning than as urged by the plaintiff.

Here it is to be noted that there is more to paragraph FOURTH than the excerpt which the plaintiff cites and relies on as creating an absolute covenant to maintain the crossing in good condition. This paragraph further provides that if in the opinion of the plaintiff the crossing should require renewals or repairs, the defendant, on written request of the plaintiff, will proceed to make them, but if not so made within ten days after notice, then the plaintiff itself may make the renewals or repairs. Moreover, it is provided in this paragraph that the defendant shall make no repairs whatsoever without first giving written notice to the plaintiff at least twenty-four hours before entering upon such work, and that in making any such repairs, the defendant shall comply with the requirements of the plaintiff as to the time and manner of doing the work. Also, paragraph FOURTH recognizes that the parties contemplated that emergencies might arise making it impossible for the defendant to give the required notices and make the repairs under the contract. As to this, it is observed that paragraph FOURTH provides that in case of emergency, the plaintiff may proceed to make the repairs and charge the costs to the defendant.

It thus appears that since the defendant's covenant to maintain the crossing is conditioned upon notice to and approval of the plaintiff as to methods of repair, and so forth, it may not be construed as making the defendant an insurer that the crossing will be maintained in good condition at all times, at all hazards.

And it is evident that the indemnity covenant contained in paragraph NINTH, by which the defendant agrees to indemnify the plaintiff against damage caused by "omissions or neglect" to repair and maintain the crossing, is referable to and must be interpreted in connection with the provisions of paragraph FOURTH. When this is done, it is manifest that the provisions of the contract do not impose absolute liability upon the defendant.

In this view of the case it seems unnecessary to discuss the distinctions and refinements of meaning placed by lexicographer's on the words "omissions" and "neglect," emphasized by the plaintiff. It may be conceded on this record (1) that the expression "omissions or neglect" is not synonymous with negligence; (2) that "neglect" is synonymous with "negligence," and (3) that "omission" is synonymous with "failure."

Conceding all this, the record here shows no damage to the plaintiff arising out of any omission of the defendant respecting maintenance or repair of the crossing within the meaning of the contract sued on.

And certainly there is nothing on the record tending to show that the rail broke as a result of an omission of the defendant. Here we have an

FREMONT v. BAKER.

entirely unexplained broken rail. It was on the plaintiff's northbound track. This means that none of the defendant's trains ever passed over the particular rail. From all that appears in the facts agreed, it is just as logical that the rail broke because it was struck by the plaintiff's train as it is to say it broke because of an omission on the part of the defendant.

The facts in this case, under a contextual interpretation of the controlling provisions of the contract, do not come within the doctrine that one who makes a positive agreement to do a lawful act is not ordinarily absolved from liability for failure to do it by a subsequent impossibility of performance caused by an unavoidable accident (12 Am. Jur., Contracts, Sec. 363). Therefore, we deem it unnecessary to discuss the authorities cited and discussed in the briefs on this principle of law.

It follows from what we have said that Judge Frizzelle correctly held that the plaintiff is not entitled to recover. The judgment below is

Affirmed.