In the Matter of the Will of JOSEPH E. STIMPSON, Deceased.

.(Filed 30 April, 1958)

**1. Executors and Administrators § 24: Judgments § 3½—**

A family agreement for the settlement and distribution of an estate, approved and confirmed by the court, becomes a contract between the parties and is to be interpreted, in accordance with rules governing contracts generally, to ascertain the intent of the parties as gathered from the entire instrument with regard to the situation of the parties at the time the consent judgment was entered and the motives and the results sought to be accomplished.

**2. Same— Family agreement for distribution of estate held not to deprive widow of her share in the personalty under her dissent from will.**

The widow filed her dissent to the probated will. Thereafter, caveat proceedings were instituted, and though the widow was a party by citation, she disclaimed any interest in the litigation, since it could not in any way impair her rights. Later, the parties entered into a consent judgment for the distribution of the estate in accordance with a family agreement. *Held:* Provision in the agreement that the widow assented to the payment of the value of her dower as contemplated by the agreement and accepted said settlement in relinquishment of all further claim in and to the estate referred solely to her right of dower and did not relinquish her right to share in the personalty, it being apparent that the widow signed the agreement solely for the purpose of permitting the lands to be sold, and that there was no intent that she should surrender the rights accruing to her under her dissent from the will.

**3. Dower § 8e—**

At common law a widow had no right to possession of the land of her husband until her .dower was assigned, and courts of law did not permit her to recover the rental value of the land assigned as dower prior to assignment, although in equity when the property was rented, she was allowed a proportionate part of the rents received.

**4. Same—**

Where the widow and heirs enter into a family agreement for the sale of the realty and the payment to the widow of the cash value of her dower, the widow is obligated to pay her proportionate part of the cost of subdividing and selling the land, and is not entitled to rents or interest in the absence of any evidence to show that sale was delayed in order that rents might accrue or that rents collected were retained by the heirs.

APPEAL by Minnie Murray Stimpson from *Bone, J.,* January 1958 Assigned Civil Term of WAKE.

Joseph E. Stimpson died testate 11 Semptember 1955. He left surviving him his widow, Minnie Murray Stimpson, the appellant, and six children, viz., Euphia Stimpson Norwood, Ronda Stimpson Echols, Reba Stimpson Dull, Elizabeth Fay Stimpson, Joann Stimpson, and Joseph E. Stimpson, Jr. The last three named are minors.

The will of Joseph E. Stimpson was filed for probate in Wake County by Reba Stimpson Dull, therein named as executrix and trustee. She qualified as executrix. Appellant in apt time filed her dissent to the will. Thereafter, on 30 December 1955, Euphia Stimpson Norwood and Ronda Stimpson Echols filed a caveat to the will. Citation thereupon issued to the widow as well as to the heirs. Appellant, in response to the citation, filed an answer "not denying" the allegations of the caveat. She prayed that the court render such judgment as it found proper.

The caveat was heard at the February Term 1957. The jury answered the issue submitted to them in favor of the propounders. Judgment was entered on the verdict. The judgment taxed the cost of the probate proceeding including attorneys' fees for propounders and caveators against the estate. Mrs. Norwood and Mrs. Echols, the caveators, excepted to the judgment probating the will and gave notice of appeal. Immediately thereafter an agreement was submitted to the presiding judge by the terms of which caveators would withdraw their appeal, caveators would participate in the distribution of the estate, the land would be sold, and the widow's dower paid in cash rather than by allotment in kind, Mrs. Dull would file a final account, make settlement as executrix and would resign as trustee. This agreement was signed by the three adult children, by the widow, the executrix, the guardian ad litem for the three minors, and the attorneys for the respective parties. Judge Carr, the presiding judge, approved and confirmed the proposed family settlement, finding that it was fair and equitable to the minors.

Acting in conformity with the approved agreement, petitioners proceeded to subdivide and sell the realty. On 26 October 1957 they filed a report showing sales aggregating $33,350. On 25 November 1957 an order was entered confirming the sales as reported. On the same day the trustees filed a report of receipts and disbursements. The only receipts shown on the report are from the sales of realty. The report shows disbursements to the widow and children aggregating $27,203.47 and other disbursements of $6,146.53. The latter sum includes $2,795.54 incident to the subdivision and sale of the realty. The remainder of the $6,146.53 is composed of inheritance taxes amounting to $34.50, and $3,116.80, costs incident to the probate of the will. Petitioners deducted from the sale price of the land $2,795.54, the costs incident to subdividing and selling the property, and computed the value of appellant's dower in the balance. The value of her dower so computed amounts to $8,384.13. This amount was tendered appellant in settlement of all of her rights in the estate of her deceased husband. She refused to accept it as full settlement, asserting (1) her right to one-seventh of the net proceeds of the personal estate of her deceased hus-

band, (2) dower computed on the gross sale price of the realty without deduction of the expenses of subdividing and selling, and (3) the rental value of her dower or interest on the value thereof from the date of her husband's death until paid.

The trustees thereupon filed a petition in the Superior Court asserting their interpretation of the family settlement agreement approved and made an order of the court in February 1957. They asked the court to advise them. Attached to and made a part of the petition is the judgment establishing the will, the family settlement agreement, the report of sales, order confirming the sales, and account of the trustees. Notice was served upon the heirs and the widow. She answered and admitted the factual allegations of the petition. She reiterated the position taken when the tender was made by the trustees as her statement of her legal right by virtue of her dissent and the family settlement agreement. She further alleged that after the judgment was entered establishing the will, counsel representing the caveators and propounders presented her with the family settlement agreement with the request that she sign the same as evidence of her consent, informing her that she would, by signing, waive none of the rights accruing to her by her dissent from the will; and "that the only purpose for which she was asked to sign the family settlement and agreement was to secure to her the allotment of her dower in cash rather than the laying off of a part of the land . . ."; that she signed the agreement based on the representations and assurances so made and given. She does not in her answer pray for reformation. No other answers have been filed. The matter was heard by Judge Bone who made findings of fact. He found that the judgment and family settlement agreement were consented to by all parties. He recited the sixth section of the judgment in his findings of fact, found that appellant has received no share in the distribution of the personalty of her deceased husband; "that, except for the signing of the said family settlement and agreement, the dissent of Minnie Murray Stimpson to the will of Joseph E. Stimpson has at no time been withdrawn or set aside." He made no findings with respect to the occupancy of the land from the date of Mr. Stimpson's death to the day of sale. He made no findings with respect to rent of said land. He concluded that appellant, by signing the agreement and consenting to the judgment dismissing caveators' appeal, waived her right to any part of the personal estate of her deceased husband; that the method of computing her dower employed by petitioners was correct; the amount tendered was in fact the correct amount owing to her, and adjudged that the payment of said sum would be a full and complete discharge of any claim which she might have against the estate of her husband or the trustees.

*G. Earl Weaver and W. Gale Parker appellee-trustees in propria persona.*

*Allen Langston for respondent, appellant.*

RODMAN, J.  Appellant does not assign as error the failure of the court to make findings of fact with respect to her allegations which might form the basis for reformation or avoidance of the provisions of the family settlement. Her assignments of error are all predicated on the thesis that the agreement and consent judgment are valid but that the court has misinterpreted and misconstrued that agreement. A determination of appellant's rights rests upon the assignments of error which she has preserved.

The judgment dismissing caveators' appeal and establishing the rights of the parties was entered by consent. It thereby became a contract between the parties. *Houghton v. Harris*, 243 N.C. 92, 89 S.E. 2d 860; *Spruill v. Nixon*, 238 N.C. 523, 78 S.E. 2d 323; *Lee v. Rhodes*, 227 N.C. 240, 41 S.E. 2d 747.

Courts do not presume to make contracts for parties. They only interpret when controversy arises as to the meaning of the language chosen by the parties to express their agreement. The rules which courts have evolved for the interpretation of contracts are applicable to consent judgments. *Rand v. Wilson County*, 243 N.C. 43, 89 S.E. 2d 781; *Carpenter v. Carpenter*, 213 N.C. 36, 195 S.E. 5.

A contract results when there is a meeting of the minds for the settlement or adjustment of asserted or disputed rights and obligations. The words chosen by the draftsman selected to reduce the agreement to writing are merely vehicles to make visible the mutual intention of the parties. Interpretation is, therefore, the ascertainment of that intent. To do so, the entire agreement must be examined with an understanding of the result to be accomplished and the situation of the parties at the moment the contract is made. *DeBruhl v. Highway Com.*, 245 N.C. 139, 95 S.E. 2d 553; *Bowles v. Bowles*, 237 N.C. 462, 75 S.E. 2d 413; *R.R. v. R.R.*, 236 N.C. 247, 72 S.E. 2d 604; *Hill v. Freight Carriers*, 235 N.C. 705, 71 S.E. 2d 133; *McCorkle v. Beatty*, 226 N.C. 338, 38 S.E. 2d 102; *McAden v. Craig*, 222 N.C. 497, 24 S.E. 2d 1; *Lumberton v. Hood, Comr.*, 204 N.C. 171, 167 S.E. 641.

Section 6 of the agreement quoted in the findings of Judge Bone is the portion of the contract expressly binding on the widow. It provides: "That Minnie Murray Stimpson, widow of the late Joseph E. Stimpson, has signified to the Court her willingness to accept her dower interest in the estate of Joseph E. Stimpson as contemplated by the proposed family agreement and settlement, and does hereby accept said settlement; relinquishing all further claim in and to the estate of said Joseph E. Stimpson."

The last clause of the quoted section is asserted to bar her right in the distribution of the personal estate. It may be conceded that this phrase, standing alone, is susceptible of the construction which appellees put on it; but when the entire contract is read with an appreciation of the rights and relationship of the respective parties to the action, such an interpretation would, in our opinion, do violence to the real intent of the parties.

We point to some of the factors which lead us to that conclusion. First, we must bear in mind that the prime object of the contract was to settle a lawsuit which could not in any way impair the rights of the widow. True, she was, by the service of the citation, a party, but a mere nominal party. Her answer had disclaimed any interest in the litigation. Her rights accrued when she dissented from the will, which was prior to the filing of the caveat. Her rights fixed by statute could only be taken from her by her act. Judge Bone expressly finds that she has not withdrawn her dissent or waived her rights, unless she did so by her signature to the agreement.

As a basis for Judge Carr's findings to bind the parties by the consent judgment, the opening paragraph reads: "That all legatees, devisees and heirs at law of the late Joseph E. Stimpson, together with the Executrix and Trustee named in the will of said Joseph E. Stimpson, are before the Court and are parties to this proceeding, either as propounders or caveators of the will of said Joseph E. Stimpson." Appellant, the dissenting widow, did not fit either of these categories. The omission of her name or status was natural and apparently deliberate, because her consent was not material to a settlement of the pending litigation. As to that she was a mere observer.

The agreement recites that the real estate on which the dwelling was situate represented the greater portion of the total value of the estate, the personalty making "a small fraction of the total value of the estate"; that the widow had dissented and was not bound by the will; that the will as probated made two bequests of $10, devised the dwelling house to Mrs. Stimpson during widowhood and the residue of the estate to a trustee for the benefit of testator's three minor children, and "that irrespective of the terms of said will relating to said testamentary trust for the benefit of said minor children, when the dower rights of the said widow are allotted and assigned to her, which rights must include the dwelling house and other outbuildings situated on the aforementioned land, the residue of said land and other items comprising the estate of said testator will be greatly diminished in value, and made impractical for farming purposes or other business operations for the purpose of providing income as contemplated by the terms of testator's will, thereby compelling the Trustee, as appointed by said will, to invade and sell or otherwise dispose of such residue,

after allotment and assignment of dower, at a depressed value in order to effectuate the purposes of said trust as set forth in testator's will." Then follows the statement that the best interests of the minors will be served by a sale of the real estate and the allotment of the widow's dower in cash. Nowhere is there a suggestion that the widow will benefit by sale of the land and allotment of her dower in cash.

No fair interpretation of a contract can be made without taking recognition of the motives which ordinarily prompt people to surrender valuable rights. They do not normally do so unless they expect some benefit to accrue to them. *Clement v. Clement*, 230 N.C. 636, 55 S.E. 2d 459.

The contract further stipulated that Mrs. Dull, the executrix, should, as soon as practicable, file with the clerk of the Superior Court of Wake County a final account as executrix indicating the completion of the administration of the estate of Joseph E. Stimpson, and that she should immediately resign as trustee under the will. Successor trustees were named.

The executrix could not complete the administration of the estate without paying to the widow her share in the personal property after the debts and costs of administration had been paid. The record does not disclose what personal property came into the hands of executrix. Her final account, if one has been filed, is not included as a part of the record. We have no information as to the costs and expenses of administering the estate. On the oral argument it was indicated that the personalty might amount to a substantial sum. Appellant's "child's share" would of course be chargeable with debts of the estate and the costs and expenses of administering the estate but not including any cost incident to the probate and caveat proceedings. When the executrix filed her final account, it was her duty to then pay to the parties entitled thereto their respective shares in the surplus. No provision was made to exclude the widow upon an accounting by the executrix. That would have been a logical place for such a provision.

When we examine the entire agreement in the light of the purpose to be accomplished, with recognition of the position of the parties, we reach the conclusion that the agreement, so far as it related to Mrs. Stimpson, dealt only with the method of alloting her dower, and did not constitute a sale, transfer, or forfeiture of her right to participate in the distribution of the personal estate.

The agreement provides for the allotment of the widow's dower by payment of the cash value rather than by allotment of specific real estate.

At common law a widow had no right to the possession of the land of her husband until her dower was assigned. *Williamson v. Cox*, 3 N.C.

4; *Webb v. Boyle,* 63 N.C. 271; *Fishel v. Browning,* 145 N.C. 71; *Taylor v. Meadows,* 169 N.C. 124, 85 S.E. 1.

Courts of law therefore held that a widow was not entitled to damages or the rental value of the land assigned as dower prior to assignment. *Sutton v. Burrows,* 6 N.C. 79; *Spencer v. Weston,* 18 N.C. 213; *Vannoy v. Green,* 206 N.C. 77, 173 S.E. 277. In equity when the property was rented, the widow was entitled to have allotted to her a proportionate part of the rents received. *Campbell v. Murphy,* 55 N.C. 357. The heir is not, however, chargeable as a trustee with a duty of renting for the benefit of the widow. He is chargeable only with the rents received while dealing with the property in good faith or the reasonable value of the premises occupied by him. *In re Gorham,* 177 N.C. 271, 98 S.E. 717; *Gay v. Exum & Co.,* 234 N.C. 378, 67 S.E. 2d 290; 17 A Am. Jur. 429, 430.

The record in this case is barren of any evidence that the heirs have received any rents or that they occupied the real estate to the exclusion of the widow. There is no suggestion that there was any bad faith in delaying sale of the real estate from February 1957 until October 1957. In the absence of any evidence to show that the sale was delayed in order that rents might accrue and that the rents collected were retained by the heirs, the widow would not be entitled to charge the heirs with the payment of rent or have interest computed on the value of her dower.

We think it a fair and necessary inference from the family settlement agreement providing for a sale of the real estate and the allotment of dower in cash that the widow is obligated to pay her proportionate part of the costs of subdividing and selling the property.

As we understand the record, the only items deducted from the gross sale price are the actual expenses incident to the sale. Since appellant is not entitled to rents or interest or damages and is only entitled to have dower allotted in the net proceeds of the sale, it follows that the method of computing her dower is the correct method and the amount tendered is the amount which she is entitled to receive for dower, but payment of that sum cannot defeat her right to participate in the distribution of the personalty, and if settlement has been made with the trustees by the executrix, she is entitled to call upon them to pay over to her her proportionate part of the personal estate.

Error and remanded.