Susie Busby, Appellant, v. B. C. Busby, Executor of The Will of George Busby, Deceased, Appellee.

Estates of Decedents: WIDOW'S ALLOWANCE; FRAUD. The statement of a widow in her application for the allowance of a year's support, alleging that her husband died intestate when in fact he left a will, does not amount to fraud, where the other allegations are substantially correct.

Allowance of Widow's Support. Code, section 3314, contemplates that an allowance shall be made to the widow out of her husband's estate for a year's support of herself and children, even though she may have property in her own right.

Allowance for Widow: APPLICATION TO SET ASIDE: DELAY. Where one of the executors of a will learned of an order making an allowance for the widow shortly after it was made, he cannot have the order set aside on his application filed two years afterwards, because of delay.

*Appeal from Linn District Court.*—Hon. Wm. G. Thompson, Judge.

Thursday, May 21, 1903.

The opinion states the case.—*Reversed.*

*Voris & Haas* for appellant.

*Fitzgerald & Varner* for appellee.

Weaver, J.—George Busby, a resident of Linn county, died testate, April 5, 1899, leaving surviving him his widow, Susan E. Busby, and two minor children, aged, respectively, eight and thirteen years. On September 21, 1899, the widow petitioned the court for an allowance from the estate for a year's support for herself and minor

children, alleging there were cash assets in the hands of the executors to the amount of about $5,000, and asking to be allowed therefrom the sum of $900. The court allowed her $600, which was soon thereafter paid. On October 11, 1901, B. C. Busby, "one of the executors" of the will, presented a petition to the court alleging that the will named J. C. Davis, E. E. Busby, B. C. Busby, and the said Susan E. Busby as executors, who duly qualified for the execution of said trust; that by the will the largest part of the estate was given to the widow and minor children; that the petition for allowance to the widow had been presented by her and said J. C. Davis without the knowledge of the other executors, or notice to "the representatives of the estate" that the petition for the allowance did not fully state the facts; that in truth the widow had in her own right and in her childrens' right a large amount of money, and "it was not necessary that such order be made, and was contrary to the intention of the will," wherefore it is said the allowance was "illegal, unauthorized, and contrary to the provisions and intention of the will"; and asks that the order be set aside, and the widow be charged with said sum, and account therefor as an executor of the will. By an amendment filed February 9, 1902, it is charged that the allowance was procured by fraud and false representations as to the financial condition of the widow. In answer to this petition, Mrs. Busby denies the alleged fraud, asserts her right to receive such allowance, and says that the executor now complaining had full knowledge of all the proceedings, and made no attempt to interfere therewith or to set aside the order for more than two years, and is estopped now so to do. Upon trial to the court, the petition of the executor was granted, the order of allowance set aside, and Mrs. Busby was ordered to account for the sum so received, as a trust fund for the benefit of the estate of her husband. From this judgment she appeals.

I. The charge of fraud is not sustained by the evidence. It is true the petition for the allowance speaks of the husband as dying intestate. Whether this misstate-

**1. Widow's allowance: fraud.** ment was by inadvertence or design is immaterial. Her right to the allowance did not depend on whether there was or was not a will in existence. The other statements of the application were substantially correct. While she had received about $2,000 life insurance, no part of the estate proper was paid to her under the will until the following year. It is not claimed that she overstated the value of the estate. Her representations of what it would require to support her and her children for a year is not to be construed as a statement that she had no resources of her own, but as the reasonable cost or expense of the maintenance of herself and children for that period.

II. The allowance to a widow for a year's support is not a mere charity, to be withheld because she has property of her own by which she could possibly keep herself

**2. Allowance of widow's support.** and children during the first year of her widowhood. The statute, it is true, says the allowance shall be made if "necessary" (Code, section 3314); but this language should have not only a reasonable, but liberal, construction to promote the purpose of its enactment. In the ordinary estate, even when of considerable value, the wife and young children of a deceased husband have during the first year special need of the assistance which this statute contemplates. If there is real estate, the title passes at once to the heirs or devisees in common, and considerable time is required before the fractional shares coming to these helpless members of the family can be made available as a means of support. If there be money or other personal estate, it passes to the administrator, who may not rightfully distribute any part of it until the court directs.

If the minor children have any property in their own right, it also is subject to like delay in being reduced to available form or made productive of income. Moreover, the mother should not be required or allowed to trench upon the infant's property, and particularly the principal fund, except in clear cases of necessity, and time is required for interest and rents to be earned. The situation in which Mrs. Busby was left appears to be substantially such as we have here indicated. The record does not disclose the extent or value of the estate left by the husband, neither does it appear that the widow had any property or means of support except such as she received under the will. By that instrument she was given proceeds of life insurance, $2,000; the further sum of $3,000, to be paid one year after the death of the testator; the interest at six per cent. per annum upon the sum of $5,000 and the use of the homestead—all such benefits to be surrendered to B. C. Busby and another in case of her marriage. Of these items she had received at the date of her application only the life insurance, about $2,000. The $3,000 was not due until the end of the year, and the annuity or interest on the $5,000 would not accrue until the expiration of that period. If she put the $2,000 at interest, that, too, would require a year before returning anything as income. In other words, she had no income whatever, and during the first twelve months must accumulate a burden of debt for the ordinary necessities of life, or must deplete the principal fund derived from the insurance, and this she should not have been expected to do.

Assuming that the insurance money and the legacy of $3,000 had been invested in six per cent. securities, the income thus produced added to the annuity provided for the benefit, the entire income obtainable under the will was $600, none of which, as we have observed, was available until the end of the year. The effect of the order of allowance, therefore, was simply to require the estate to

support the woman and children at this rate during that period. This was neither extravagant nor unjust. The case of *Newans*, 79 Iowa, 32, is directly in point. We there held that an allowance should be made, even though the widow has property in her own right, if her income is insufficient for her support, without resort to the principal fund, and we added: "We do not think she should be compelled to dispose of her property, and thereby destroy her means of support for the future, in order to meet her expenses for the year in question, and thus save an appropriation by the court."

III. As already stated, the order making the allowance was made at the September term of the district court in 1899. The appellee admits that he learned of the ap-

3. ALLOWANCE plication and of the court's order not later
for widow:
application than one or two days thereafter, and tells us
to set aside:
delay. that he then went to appellant and upbraided her for having procured the allowance, and told her he should charge it against her as a payment upon the cash legacy. By what authority he assumed to override and nullify the judgment of the district court he does not explain. He took no measures of any kind to have that judgment set aside until after a lapse of two years, when this proceeding was instituted, and the alleged fraud appears not to have been thought of as a basis of relief until several months later, when it was added as an amendment to the pleadings. Meanwhile the money has been paid over, and the evidence tends to show it has been expended. Under such circumstances, the appellee is estopped by his own laches to make this complaint, even if fraud was committed (which we do not find), and he is therefore not entitled to the relief demanded. *Harshman v. Slonaker*, 53 Iowa, 467.

For the reasons stated, the judgment of the district court is REVERSED.