IN RE E. E. GORHAM, ADMINISTRATOR OF JOHN C. GORHAM, DECEASED.

(Filed 2 April, 1919.)

1. Evidence—Deceased Persons—Transactions and Communications—Statutes—Executors and Administrators—Dower—Principal and Agent.

Where the administrator has brought proceedings to sell the lands of the intestate to pay his debt, subject to widow's dower, and it appears that only a part of the lands was owned by the intestate, and that he had taken title in the other part to facilitate transactions as selling agent for a bank, but to which proceedings the bank was not a party, the officers of the bank have no such direct legal or pecuniary interest in the result of a subsequent action, between the administrator and the widow, as would disqualify them from testifying to the fact of agency, under the provisions of Revisal, sec. 1631, in favor of the administrator and against the widow claiming her right of dower in the whole of the lands; and where their testimony was as to the contents of a written contract of such agency, it was not necessarily of a conversation or transaction between the bank and the deceased.

2. Judgment—Estoppel—Executors and Administrators—Sales—Assets.

Where a decree, in proceedings by an administrator to sell lands to make assets to pay a debt due by the estate to a bank, the bank not having been made a party, orders the lands to be sold subject to the widow's right of dower, leaving the entire funds subject to the further order of the court, and it appears that thereafter the administrator ascertained that the intestate acquired title to a part of the lands only as the selling agent of the bank, it does not estop the administrator from showing the facts of the agency and the amount due the bank, this matter not having been adjudicated or passed upon in the special proceedings.

3. Dower—Widows—Rents—Sales—Interest.

The widow's claim of dower in the lands of her deceased husband, while paramount to that of the heir, is not an estate but a right until allotment, continuing from the death of her husband; and from that

time she is entitled to damages, measured by the rental value, for the time she has been kept out of possession; and in case of sale of the lands to make assets to pay the debts of the deceased, interest on her proportionate part from the sale until payment, charging her interest, in return, for such sums as she may be indebted to the estate. The common-law principles relating to this subject and the statutory changes, discussed by *Mr. Justice Allen.*

**4. Same—Heir in Possession—Election of Widow.**

Upon the principles allowing the widow the rents from the lands of her deceased husband by way of damages for being kept out of her dower interest therein, the heir is chargeable only with the rents received while dealing with the property in good faith, or for the reasonable value of the premises if occupied by himself; and this principle obtains as to the proceeds of the sale of her dower lands when bought by her, except, at her election, she may take one-third of the rents collected after the sale in lieu of interest for the period covered by the rents, and she will be chargeable with interest on the purchase price.

**5. Courts—Equity—Clerks of Court—Jurisdiction—Executors and Administrators—Sales—Assets.**

While a statutory method by proceedings before the court is provided for the assertion by the widow of her right of dower in the lands of her deceased husband, the jurisdiction of the court of equity has not been disturbed, though usually some equitable element, such as the necessity for an accounting, must be alleged in the suit.

Appeal by both parties from *Lyon, J.*, at chambers, on case agreed, February, 1919, from Cumberland.

A controversy having arisen between E. E. Gorham, administrator of the estate of John C. Gorham, and the commissioner appointed to sell the lands of his intestate to create assets for the payment of the debts of the estate, on the one hand, and Mrs. Georgia Chedester, the intestate's widow, who has since married H. C. Chedester, on the other, and wishing the same to be determined without action they submitted a case, the material parts of which are as follows:

1. That John C. Gorham died intestate, 28 February, 1910, leaving him surviving the aforesaid widow, a brother, and sisters.

2. That E. E. Gorham qualified as administrator upon his estate 10 March, 1910, the widow renouncing in his favor.

3. That on .... May, 1911, said administrator filed a petition to sell intestate's lands to make assets to pay his debts, to which *ex parte* proceeding the widow and heirs at law of the intestate and F. H. Cotton and wife, Ila H. Cotton, as well as E. E. Gorham as an individual, were parties, which petition and all of the orders, reports, judgments, and decrees therein are hereby made a part hereof and asked to be so considered.

4. That at a public sale of some of the lands on 16 December, 1912,

the intestate's widow became the successful bidder for the first or residence tract, at the price of $9,200, and upon report thereof the same was confirmed on 12 May, 1913.

7. That by agreement the $9,200 was not paid but was to await the determination of her claims against the estate, and she and the administrator have been constantly endeavoring to ascertain the exact amount due her by him so that she could pay the difference, if any, between such sum and the amount of her said bid.

That the administrator rented the said residence from 10 July, 1912, until 10 October, 1917, the amount of rent ($1,890) being used by him as assets in his hands, for the payment of debts of the estate, and his annual accounts are made a part hereof and asked to be so considered.

13. That prior to the filing of the aforesaid petition in May, 1911, there was another special proceeding in said court, to which the administrator of John C. Gorham and the intestate's widow and heirs at law were parties, and also F. H. Cotton and his wife, numbered 2,066 and 2,214 on the special proceeding docket, in which E. E. Gorham was appointed commissioner to sell the McKethan lots, Nos. 5, 6, 7, and 9, alleged and adjudged to have been owned by intestate and F. H. Cotton, under authority of which the said commissioner sold lots 5, 6, and 7 for $2,900 on 1 December, 1910, and lot No. 9, 8 February, 1912, for $1,600. It was further alleged in the petition and adjudged by the court that the indebtedness due the bank on the purchase price of said lots was about $2,600. The aforesaid proceeding is made a part hereof and asked to be so considered. The administrator now contends that his intestate and F. H. Cotton were not in fact the owners of the said McKethan lots, but were the selling agents for the Bank of Fayetteville, who were the owners, and that they had taken title thereto to facilitate a conveyance of the same; that under the terms of the selling agreement with the bank the administrator turned over all proceeds of sale to the bank and received $275 as full payment of the amount due the estate of John C. Gorham on the sale of all the said lots; and that the allegations of the petition and the judgment rendered thereon were based upon such information as the administrator then had as to the ownership of said lots and the indebtedness due thereon, and which information he believed to be true at the time said petition was filed and judgment rendered, but which information he afterwards found to be incorrect and the facts to be as hereinbefore stated. Mrs. Chedester pleads the said proceeding as an estoppel against such claim and contention. She denies that John C. Gorham and F. H. Cotton were not the owners of said lots. Subject to her denial and plea of estoppel as aforesaid, it is agreed that the judge to whom this controversy is sub-

mitted may hear competent evidence on this point and find the facts in regard thereto.

It was also agreed that the administrator was due Mrs. Chedester certain amounts from the proceeds of sales of certain lands as the value of her dower interest, but the parties could not agree as to the dates from which these amounts would bear interest.

The special proceedings referred to in the findings 3 and 13 were *ex parte* and were for the purpose of selling the McKethan lots for assets.

It was alleged in the petition in these proceedings that F. H. Cotton was owner of an undivided one-half interest in said lots and that the heirs of John C. Gorham were the owners of the other one-half, subject to the dower, and that all of said interests were subject to the claim of the Fourth National Bank of Fayetteville for $2,600, the balance of purchase money, and the decree of confirmation in the proceedings were in accordance with the allegations in the petition and recited the several interests as therein set forth.

The decree further required the administrator to collect the purchase money, total of the McKethan lots $4,500, pay off the bank debt, and hold one-half of the balance for distribution under the orders of the court.

The bank was not a party to the proceeding.

The McKethan lots were conveyed by the Bank of Fayetteville to the Southern Real Estate Company and then by the Southern Real Estate Company to Frank H. Cotton and John C. Gorham.

At the hearing of the agreed case the administrator was permitted to prove by John O. Ellington and Dr. Lilly, officers and stockholders of the bank, that at the time Cotton and Gorham took the title to said lots there was a written agreement, which was lost, that they would hold the title to the lots, as selling agent for the bank, to repay a larger sum than $2,600, and that after the sales were made and upon a settlement in accordance with the agreement that there was only $275 which went into the hands of the administrator from the McKethan lots, and this was paid as commissions for making the sales.

Mrs. Chedester objected to this evidence: (1) Because Ellington and Lilly were incompetent to testify under section 1631 of the Revisal. (2) Because the administrator was estopped by the special proceedings to show that more than $2,600 was due to the bank.

His Honor found upon this evidence "that Gorham, administrator and commissioner as aforesaid, is not estopped by the proceedings for the sale of said property, and that Cotton and Gorham held the same as selling agents for the bank, and that intestate's estate was entitled to

IN RE GORHAM.

$275 as commissions, and that Mrs. Chedester is not entitled to dower in said property."

Mrs. Chedester again excepted.

His Honor entered judgment upon the agreed case from which Mrs. Chedester appealed, assigning as error, in addition to the exceptions before stated, the following:

1. "For that the court did not find and adjudge that Mrs. Chedester is entitled to interest on the value of her dower from 28 February, 1910, the date of the death of her former husband, John Gorham, and that if she is not entitled to it from that date, then from the filing of the petition for the sale of the McKethan lots as to them, to wit, 19 November, 1910, and from the filing of the petition as to all the other lands, to wit, May, 1911; and that in no event should the interest be calculated for a less period of time than from 10 March, 1912, which is two years after the qualification of E. E. Gorham as administrator, as claimed and contended for in the case agreed, paragraphs 15 (a) and (b).

2. "For that the court did not find and adjudge that she is entitled to interest on the value of her dower in the home place in accordance with her contentions as above set forth in the twenty-second assignment, instead of from 18 September, 1916, the date of Judge Winston's judgment in the former action between the parties concerning her claim for lien on said property, during which time the administrator received the rents therefor."

The facts and rulings thereon entering into the judgment of Judge Winston will be found in 173 N. C., 272.

*Q. K. Nimocks attorney for administrator.*
*Sinclair & Dye attorneys for Mrs. Chedester.*

ALLEN, J. The appeal presents three questions for decision:

1. Were the witnesses Ellington and Lilly competent under section 1631 of the Revisal to testify that Cotton and Gorham held the title to the McKethan lots as selling agents for the bank of which they were stockholders?

2. If competent to testify, is the administrator estopped by the special proceedings to sell lands for assets?

3. What are the rights of the widow of John C. Gorham as to interest on the value of her dower in the proceeds of lands sold and as to rents?

1. The interest, which disqualifies one from testifying under section 1631 of the Revisal, is a direct, legal or pecuniary interest in the event of the action (*Helsabeck v. Doub,* 167 N. C., 205), and as the bank has been paid in full, and there is no effort to make it refund any part of

the money collected, and it is in no way interested in the result of this action, there is nothing which disqualifies the witnesses Ellington and Lilly to testify.

Besides, they were not necessarily testifying to a conversation or transaction with the deceased but as to the contents of a lost paper, and their testimony was in behalf of the administrator and not against him.

2. The decree in the petition to sell land for assets did not purport to finally adjudicate the rights of the widow as to dower in the proceeds of sale, and, on the contrary, it only gave her a dower right in the interest of John C. Gorham after payment of the amount due the bank, stated to be $2,600, and left the entire funds subject to the further order of the court.

The bank was not a party to the proceeding, and its debt was not in issue nor was it litigated, and the amount was stated simply as one of the reasons for asking for a sale of the lands, and the proceeding therefore cannot operate as an estoppel to prevent the parties from showing the true amount due to the bank.

The case of *Latta v. Russ,* 53 N. C., 111, which is approved in *Austin v. Austin,* 132 N. C., 265, and in *Trust Co. v. Stone,* 176 N. C., 272, is in point.

There a petition was filed to sell land for assets, in which the several debts were stated and decrees of sale and confirmation entered, the lands sold, and the proceeds applied to the payment of debts. The administrator then died and an action was commenced for an accounting of the estate, in which a referee found that, allowing credits for vouchers, there remained in the hands of the administrator $882.22, but if the debts be allowed as stated in the decrees, there would be in hand only $252.45.

The judge of the Superior Court held that the decrees were binding on the parties as to the amount of the debts as stated in the petition, but this was reversed on appeal, the Court saying: "We do not concur with his Honor in the view taken by him of the question reserved, in respect to the effect of the decree giving the administratrix license to sell the land. That decree was an adjudication that it was necessary to sell and is conclusive in favor of the title acquired by the purchaser, but it is not conclusive of the question of debt or no debt as against or in favor of creditors, or as against or in favor of the heirs."

As the evidence was competent and as there is no estoppel, the finding thereon by his Honor is binding on us and concludes the claim of the widow to dower in the McKethan lots.

3. The claim of the widow for dower, while paramount to that of the heir, is not an estate but a right until allotment. *Spencer v. Weston,* 18 N. C., 214. "It is true, indeed, that she cannot enter until assignment

made, and that in point of tenure, for feudal reasons, she holds of the heir or of the person in whom is the reversion of the land for dower; but, in point of title, her estate does not arise or take effect out of the ownership of the heir or other person making the assignment, but is considered a continuation of that of the husband; and although between the death of the husband and the assignment of dower a *seizin* of the heir or other person intervenes, yet upon the assignment she is in by relation from the death of the husband, for 'the law adjudgeth no *mesne seizin* between the husband and wife.' Perkins, s. 414, Co. Lit., 241." *Norwood v. Marrow,* 20 N. C., 584, approved in *Love v. McLure,* 99 N. C., 295, and in other cases.

This being the nature of the estate, it was held at common law to be the duty of the heir to allot dower to the widow immediately upon the death of the husband, and under Magna Charta she could remain in the mansion house forty days until the allotment was made, called her right of quarantine, and, upon default on the part of the heir, she could sue out her writ of dower; but, although establishing her right, she could not recover damages, nor was she entitled to an accounting of the rents and profits. This remained the law until the Statute of Merton, 20 Henry III, which not only perfected the process for the assignment of the dower, but also stimulated the heir to activity by permitting the recovery of damages for the detention of the dower.

The proceeding was at first in the courts of the common law, but the broader and more generous rules of equity being better adapted to adjust the rights between the heir and the widow, it soon became recognized as within the jurisdiction of courts of equity (9 R. C. L., 608 *et seq.*), and in this State, while a statutory remedy by proceeding before the clerk is afforded, the jurisdiction of the courts of equity has not been disturbed, although usually some equitable element, such as the necessity for an accounting, must be alleged. *Efland v. Efland,* 96 N. C., 488, and cases cited.

The recovery under the Statute of Merton, and under our statutory remedy, was "Not rents (which suppose a privity of estate) but damages for the detention of her dower, in assessing which the value of the rents is the proper guide to the jury" (*Sutton v. Burrows,* 6 N. C., 81), and it was held, with some hesitation, that *at law* the damages could only be recovered from demand. (*Spencer v. Weston,* 18 N. C., 216, approved *Brown v. Morrisey,* 126 N. C., 772.) "But it has been long settled that in equity a widow is entitled to an account of the *mesne* profits from the death of the husband up to the assignment of dower. Indeed this was one of the grounds upon which that court assumed jurisdiction." *Pearson, J.,* in *Campbell v. Murphy,* 55 N. C., 364.

Applying these principles, this proceeding being in equity, we are of

opinion that the widow, Mrs. Chedester, is entitled to an accounting of the rents and profits from the death of her husband up to the time of the sales of the several lots of land in which she was entitled to dower, and after the sales to the interest upon the value of her dower in the proceeds of the sales, and the case of *Campbell v. Murphy, supra,* is a direct authority upon both questions.

In that case Marsden Campbell, the husband, died in 1841 and his heirs rented the property until the buildings were destroyed by fire in 1843. In 1844 the land was sold under order of court for $4,000, and the court held that the widow was entitled to recover the rents from 1841, the time of the death of the husband, until 1843, this being the time when the heirs rented the property, and that she was entitled to interest upon one-third of $4,000 for which the land was sold under order of court.

The Court says: "It must be declared to be the opinion of the Court that the plaintiff is entitled to recover from the defendant Murphy the interest upon one-third of the sum for which the lot was sold at the sale made by the clerk and master mentioned in the pleadings, to wit, $4,000, from the date of that sale up to the taking of the account, and also interest upon such third part of the purchase money to be paid annually up to the time of her death, for which the plaintiff will have lien upon the premises as security, unless she elects to take the bond of the said Murphy, with approved sureties, in lieu thereof, or the plaintiff may elect to take a decree for such part of the purchase money aforesaid absolutely, with interest from the date of the sale, as is equal to the value of her life estate in one-third part thereof, as to which there may be a reference." And, again: "These defendants insist that they are not chargeable with the rent received by them for the house from the death of the husband up to the time it was burned.

"There was no judgment for damages in a writ of right, or a writ of entry, or a writ of dower at common law, on the ground that the *terretenant,* during the time he was seized, had performed the feudal services. Damages were given against a disseizor by statute in an assize of *novel disseizin;* and damages are given to the widow by the Statute of Merton in a writ of dower *unde nihil;* but it has been long settled that in equity a widow is entitled to an account of the *mesne* profits from the death of the husband up to the assignment of dower. Indeed, this was one of the grounds upon which that court assumed jurisdiction."

It will be observed that under this doctrine the heir is not chargeable as a trustee, but only with the rents received while dealing with the property in good faith or for the reasonable value of the premises if occupied by himself.

These principles also cover the claim of the widow in the proceeds

of the sale of the lot bought by her, except that she may, at her election, take one-third of the rents collected after the sale in lieu of interest for the period covered by the rents, and she will be chargeable with interest on the purchase price.

The judgment will be modified in accordance with this opinion after the parties have agreed upon the amounts allowed the widow or after the facts have been ascertained by a reference.

Modified and affirmed.