Argued February 3, reversed and remanded March 2, 1960

IN THE MATTER OF THE ESTATE OF

## JOEL C. BOOTH, DECEASED

## BOOTH *v.* FIRST NATIONAL BANK OF PORTLAND ET AL

349 P. 2d 840

*Stuart W. Hill,* Portland, argued the cause and filed briefs for appellant.

*Orval N. Thompson,* Albany, argued the cause for respondents. On the brief were Morley, Thomas & Orona, Lebanon, and Weatherford & Thompson, Albany.

Before McAllister, Chief Justice, and Perry, O'Connell and Harris, Justices.

O'CONNELL, J.

This is an appeal from a decree of the circuit court for Linn county affirming an order of the probate court dismissing plaintiff's petition for the payment of the widow's statutory allowance and petition for dower from the date of the death of plaintiff's husband.

Plaintiff, Ruby Booth, is the widow of J. C. Booth, who died testate on July 18, 1954. The First National Bank of Portland, one of the defendants, is the executor of the estate of J. C. Booth; the other defendants are the heirs of J. C. Booth, being his children by a former marriage.

The will was admitted to probate on July 23, 1954. On February 14, 1955 plaintiff elected to take her dower interest in the estate of J. C. Booth instead of any interest under his will.

On October 3, 1955 plaintiff filed a petition for the assignment of dower in the probate court, and on February 27, 1956 the court entered its order approving the report of the dower commissioners setting apart to plaintiff as her dower two parcels of land described in the inventory and appraisement as a rest home in Lebanon and the Crabtree farm.

On January 10, 1957 plaintiff filed in the probate

court a petition entitled "Petition of Widow for Reasonable Support and Sustenance Out of the Estate for One Year." In this petition she alleged that her actual living expenses during the year following her husband's death were in excess of $6,000; that the total income received by petitioner during that year was $1,914.89, and she prayed for an order requiring the executor to pay her $4,085.11 which she alleged was a reasonable amount to allow for her support and maintenance.

On January 10, 1957 plaintiff also filed in the probate court a petition entitled "Petition for Dower From date of Death," in which she prayed for an order requiring the executor to pay to her one half the net income derived from the real property in the estate, from the date of her husband's death to the date of the assignment of dower, without diminution on account of the claims of creditors or expenses of administration. The petition alleged that the estate received net income from the real property during that period in the following amounts: Office Building $1,049.12; Central Lane Building $3,942.66; Rest Home $794.60; Crabtree Farm $1,848.05; totalling $7,634.43. Each petition explains the plaintiff's delay in filing it on the ground that she did not know her rights in each instance until her present attorney informed her of them.

We shall first consider plaintiff's claim for dower, i.e., the rents and profits from the date of her husband's death to February 27, 1956, the date upon which the assignment of dower was effective.

Defendant first refers to *Dahlhammer and Roelfs v. Schneider Exec.*, 197 Or 478, 252 P2d 807 (1953) for the proposition that prior to the assignment of dower the widow has no estate in the lands of her de-

ceased husband and that her interest is no more than a right of action to have her dower assigned to her. In that case it was held that the death of the widow prior to the assignment of dower terminated her dower right. It is argued that there being no estate in the widow until assignment of dower is made, the right to the rents and profits derived from the land from the death of the husband to the date of assignment of dower vests in the executor or administrator of the husband's estate. The case of *Leonard v. Grant,* 8 Or 276 (1880) is relied upon to support this proposition. In that case the widow sought to recover one third (the widow's fractional dower interest at that time) of the rents and profits which had been collected by the administrator between the time that he was appointed and the time he sold the dowable lands. The amount so received by the administrator was applied by him to the payment of debts owed by the decedent. At the time she brought action to recover a share of these proceeds plaintiff had not obtained an assignment of dower. The court said that since no assignment had been made the plaintiff's interest was a mere chose in action; she had no estate in any part of the land and was not entitled to possession of it and, therefore, the administrator became entitled to the possession and control of all the lands upon the death of the decedent, including the rents and profits from such lands.

Plaintiff seeks to distinguish the present case from *Leonard v. Grant,* supra, on the ground that in the latter case, the widow, not having obtained an assignment of dower, had no standing in an action at law to assert a claim against the estate. But the case quite clearly does not rest on this point alone and we must examine it more carefully to see if it now represents the law in this state.

■ It appears to be assumed in the Leonard case that as against a properly presented claim of dower the executor or administrator is not only entitled to possession of the land, but that he is entitled to use the rents and profits from all of the land if it is necessary to pay the debts of the estate. It is apparent that the court regarded the dower interest in the same light as the interest of an heir or devisee, in both instances subordinate to the claims of creditors. Now, that certainly is a misconception of our law because it is clear that the widow in this state does not take her dower interest subject to the claims of creditors. *House v. Fowle,* 22 Or 303, 29 P 890 (1892); *Whiteaker v. Belt,* 25 Or 490, 36 P 534 (1894); *Smith's Estate,* 43 Or 595, 73 P 336, 75 P 133 (1904); *Yeaton v. Barnhart,* 78 Or 249, 150 P 742, 152 P 1192 (1915).

The court, in *Leonard v. Grant,* supra, went on to say that the widow "is not entitled to an assignment of her dower in the lands of her husband until the administration is completed, or the same is surrendered to the heirs or devisees, by the order of the probate court." 8 Or at page 278. This conclusion was reached on the reasoning that the probate code, by providing for the support of the widow and minor children during administration, was intended to be in lieu of dower during that period. If this conclusion were accepted it would mean that the value of the dower right would rest in part at least upon the length of time it would be necessary to close an estate. Certainly the legislature did not intend such a result. The legislative history itself makes it evident that the court proceeded upon a false assumption as to the purpose of the pertinent statutes relating to dower and the administration of estates. This is clearly explained in 1 Jaureguy and Love, Oregon Probate Law and Practice, § 112.

An additional hurdle must be taken if the Leonard case is to be accepted as stating the Oregon law with respect to dower. At the time the case was decided there was a statute, as there is now (ORS 113.540) providing a remedy for withholding dower. ORS 113.540 is essentially the same as the section which was in effect at the time the Leonard case was decided. The statute provides:

"113.540 Damages against heir. When a widow recovers her dower in any land aliened by the heir of her husband, she is entitled to recover of such heir, in a civil action, her damages for withholding such dower from the time of the death of her husband to the time of the alienation by the heir, not exceeding six years. The amount which she is entitled to recover from the heir shall be deducted from the amount she would otherwise be entitled to recover from the grantee; and any amount recovered as damages from the grantee shall be deducted from the sum she would otherwise be entitled to recover from the heir."

The court did not attempt to explain how this provision, measuring the widow's dower interest from the date of her husband's death, fits into the court's conception that the dower right entitles the widow to the assignment of dower (and presumably the rents and profits from dowable lands) only after the administration of the estate was completed.

As we shall presently show, the court in *Leonard v. Grant,* supra, did not give sufficient weight to this section of the dower statutes in appraising the widow's dower right in Oregon. Consequently, we do not feel bound by that case.

■ We shall now state our views with respect to the rights of the widow to dower during the administration

of her husband's estate. We reaffirm the view expressed in *Dahlhammer and Roelfs v. Schneider Exec.,* supra, that prior to assignment of dower the widow does not have a vested estate in dowable lands and that her interest may be regarded for most purposes as a mere right of action to have an assignment made. But once an assignment is made, her interest not only blossoms into an estate in land but it relates back to the time of her husband's death. Her estate is then regarded as an extension of the husband's estate for the life of the widow. *Bettis v. McNider,* 137 Ala 588, 34 So 813, 97 Am St Rep 59 (1903); *McLeery v. McLeery,* 65 Me 172, 20 Am Rep 683 (1876); *Citizens Bank & Trust Co. v. Watkins,* 215 N C 292, 1 SE2d 853 (1939); Park on Dower, p 340; 2 Scribner on Dower (2d ed) 772. This was the concept at common law and there is nothing in our statutes inconsistent with it. See: *In re Gorham,* 177 N C 271, 98 SE 717 (1919); *Radley v. Radley,* 78 NJ Eq 170, 78 A 194 (1910); *Lajoie v. Bellomy,* 129 W Va 685, 41 SE2d 349 (1947); ORS 113.010; 1 American Law of Property, §§ 5.45, 5.47, 5.48; 2 Scribner on Dower (2d ed), pp 82, 722, 772; 2 Tiffany on Real Property (3d ed) §§ 502, 550, 551. However, according to the early English law the estate did not relate back for all purposes and, until the rule was changed by statute, the widow was entitled to the rents and profits only after assignment of dower, or if she was obliged to proceed by writ of dower only from the date of the judgment. Park on Dower, pp 301, 305, 309; 2 Scribner on Dower (2d ed) pp 699-701, 774, 778, 779.

At a time when feudal obligations accompanied the possession of land the rule permitting the possessor, normally the heir of the husband, to retain the rents and profits was reasonable. See: 2 Scribner on Dower (2d ed) p 774; Haskins, The Development of

Common Law Dower, 62 Harv L Rev 42, 47, 48 (1948). But when feudal duties were disassociated from the possession of the land the rule depriving the widow of a share of the profits from the land was regarded as unjust. The principal legislation aimed at ameliorating the injustice was the Statute of Merton, enacted in 1235. The statute made available to the widow a remedy for the withholding of dower, the "damages" consisting of the "value of the whole dower to them belonging *from the death of their husbands* until the date that the said widows, by judgment of our court, have recovered seisin of their dower." (Emphasis added) The statute was applicable only where the husband died seised and, therefore, no recovery under the statute could be had if the husband prior to his death had conveyed to a purchaser. In other words, the remedy was available only against the husband's heir or the heir's alienee. However, through the development of relief outside the statute the widow could recover from a person who had acquired seisin prior to the death of the husband, but the recovery was limited to damages (the one third share of rents and profits and damages, if any, resulting from the wrongful detention) from the time demand was made upon such person to assign dower. Thus, the rule was ordinarily stated to reflect the difference between (1) recovery against the heirs of the husband, in which case the widow was entitled to her share of the profits from the time of the husband's death; and (2) recovery against others, i.e., where seisin was acquired before the husband's death, in which case the widow was entitled to the rents and profits from the time of demand.

The foregoing brief history of the widow's remedy for withholding dower, with emphasis upon the difference in recovery recited immediately above, is not set

forth simply as an indulgence in an appetite for matters historical or academic. The Statute of Merton is a part of our legal heritage and must be reckoned with in reading our statutes. With an understanding of the course which the law took in working out the widow's remedy for the detention of dower our own statutes are more readily understood. ORS 113.510 and 113.520 provide as follows:

"113.510 Recovery of damages in action for dower. Whenever, in any action brought for the purpose, a widow recovers her dower in land of which her husband died seised, she is entitled also to recover damages for the withholding of such dower.

"113.520 Estimation of damages. Damages for withholding dower shall be one-half of the annual value of the mesne profits of the lands in which the widow recovers her dower, to be estimated in a suit against the heirs of her husband from the time of his death, and in suits against other persons from the time of demanding her dower of such persons."

It will be noted that ORS 113.520 is cast in terms of the distinction referred to above, between the remedy against the heirs and the remedy against others, i.e., persons who derived their seisin from the husband before his death. Our statute has been regarded as an incorporation of the Statute of Merton and the corollary rules which it spawned. 2 Scribner on Dower, p 701, 780. We are satisfied with that explanation. It may be noted that in most states where dower is recognized the Statute of Merton is regarded as the forebearer of the remedy for withholding dower. Annotation: Assignment of Dower, 39 Am St Rep 25 at p 38; Annotation: The right of a doweress to mesne profits or damages for the detention of her dower, 21 LRA

180; 1 American Law of Property § 5.48; 2 Scribner on Dower (2d ed) p 700; 2 Tiffany on Real Property (3d ed), § 546; 3 Vernier, American Family Laws, § 212 (1935).

Our adoption of the ancient law has produced some distortion in ORS 113.520. The statute speaks of a suit against the heirs and suits against others. In the usual case at common law the heir of the husband was the person who withheld dower because the possession of real property passed directly to the heir and not to the personal representative as it does under our law. This undoubtedly accounts for the fact that our statute speaks in the same language. But in so doing, no provision is expressly made for the usual case, i.e., where the possession of the lands is in the executor or administrator. The statute could be construed so that personal representatives would be included in the clause "suits against other persons," see *Roessle v. Roessle,* 163 App Div 344, 148 NYS 659 (1914); but there would be no reason for treating the personal representative differently from the heir for the purpose of determining the beginning date for the accrual of the rents and profits where suit is brought by the widow.

■ To give ORS 113.520 a sensible meaning in light of its derivation we construe it to mean that where suit is brought against the heirs or the executor or administrator of the estate (who represents the heir in the sense that he holds possession for him subject to superior claims) the widow is entitled to rents and profits estimated from the time of the husband's death. See: *Slatter v. Meek and Wife,* 35 Ala 528 (1860).

■ We express no opinion as to the widow's right of recovery where the action is against the alienee of

the heir or personal representative, or where the defendant derives his seisin from the husband prior to the latter's death. (It will be noted that ORS 113.510, as did the Statute of Merton, limits recovery of damages to cases where the husband "died seised.") Nor do we decide whether the widow's right dates back to her husband's death or to the time of demand where the heir is actually in possession and alleges that he was willing at all times to assign dower if demand had been made. *Rankin v. Oliphant,* 9 Mo R 144 (1845); *Hitchcock v. Harrington,* 6 Johns. R. 290, 296 (NY 1810); Buller on Nisi Prius (7th ed) 117 (1817); Park on Dower, p 308; 2 Scribner on Dower (2d ed), pp 705, 707; But cf.; *Skovborg v. Smith,* 9 NJ Super 389, 74 A2d 910 (1950); *Hopper v. Hopper,* 22 NJL 715 (1850). We simply hold that where the administrator or executor of an estate receives income from lands of which the widow's husband died seised she is entitled after assignment of dower to one half of the rents and profits from such lands from the date of her husband's death.

Other courts faced with a similar problem of interpreting their dower statutes have reached the same result as we. *O'Ferrall v. Simplot,* 4 Iowa 381 (1857); *McElroy v. Wathen,* 3 B Mon 135 (Ky 1842); *Kendall v. Honey,* 5 T B Mon 283 (Ky 1827); Annotation: The right of doweress to mesne profits or damages for the detention of her dower, 21 LRA 180; 3 Vernier, American Family Laws, § 212. And where no provision is made in the statutes with respect to damages for withholding dower, equity has filled the gap and has awarded to the widow the rents and profits from the date of her husband's death. See: *Waters v. Williams,* 38 Ala 680 (1863); *May v. May,* 7 Fla 207, 68 Am Dec 431 (1857); *Sellman v. Bowen,* 8 Gill & Johnson 50

(Md 1836); *Chase's Case,* 1 Bland's Ch 206, 17 Am Dec 277 (Md 1826); *In re Gorham,* 177 N C 271, 98 SE 717 (1919); *Shields v. Hunt,* 39 NJ Eq 485 (1885); *Hazen v. Thurber,* 4 Johns Ch R 603 (NY 1820).

We shall now consider the petition for support out of the estate. The pertinent part of the statutes relating to support are as follows:

"113.070 Widow may remain in dwelling and have sustenance one year. A widow may remain in the dwelling house of her husband one year after his death without being chargeable with rent therefor, and shall have her reasonable sustenance out of the estate for one year."

"116.005 Possession of homestead, wearing apparel and furniture before inventory; provision for support. Until administration of the estate is granted and the inventory filed, the surviving spouse and minor children of the deceased are entitled to remain in the possession of the homestead, all the wearing apparel of the family and household furniture of the deceased. The widow and minor children shall also have a reasonable provision for their support during such period, to be allowed by the court."

"116.010 Setting apart property exempt from execution. Upon the filing of the inventory the court or judge thereof shall make an order setting apart for the widow, widower or minor children of the deceased, if any, all the property of the estate exempt from execution, according to exemption laws in effect as of date of death of deceased. The property thus set apart is the property of such widow or widower to be used or expended by her or him in the maintenance of herself or himself and minor children, if any. * * *"

"116.015 Further order for support. If the exempt property described in ORS 116.010 is insufficient for the support of the widow and minor children, according to their circumstances and condi-

tion in life, for one year after the filing of the inventory, the court or judge thereof may order that the executor or administrator pay to such widow, if any, and if not, then to the guardian of such minor children, an amount sufficient for that purpose; but such order shall not be made unless it appears probable that the estate is sufficient to satisfy all the debts and liabilities of the deceased and pay the expenses of administration in addition to the payment of such amount."

The probate court denied the plaintiff's petition for support. The circuit court affirmed the decree of the probate court. The basis for the decree of the circuit court is found in one paragraph of its opinion. There the court quoted from *In re Frizzell's Estate,* 95 Or 681, 690, 188 P 707 (1920) as follows:

"The separate property of the wife, as well as the amount of the estate left by deceased, are matters to be taken into consideration in fixing the allowance: 1 Woerner on Administration, § 87."

The opinion of the circuit court then concluded as follows: "Considering the evidence in this case pertaining to the separate property of the widow and applying the above rule, it is my opinion that the District Court did not err in denying the Petition for support."

The record shows that the plaintiff's separate estate consisted of the following property. The house in which plaintiff and her husband lived was held by them as tenants by the entirety. Upon her husband's death plaintiff sold the house for $25,000. She testified that she regarded it as having a value of $35,000. A smaller house appraised at $4,000 was also held by the entirety. She was also a tenant by the entirety of a laundry building. It was appraised at $8,000 for tax purposes and it produced a rental of $75 per month. Through

the assignment of dower plaintiff received a dower interest in a 320-acre farm appraised in the estate at $50,000, and a rest home in Lebanon, Oregon appraised at $15,000. Assets in the form of personal property consisted of a $4,388.59 checking account which had been held jointly with her husband; a 1954 Buick valued at $2,330; furniture and furnishings appraised at $4,500; life insurance proceeds amounting to $10,508.40, paid in 36 installments of $291 each; a termination dividend amounting to $6,797, and the proceeds of two policies of life insurance the amount of which was not established but probably in the sum of $2,000. The total value of the real and personal property which were the subject of inter vivos transfer by plaintiff's husband to her was in excess of $77,000. The interest in the property assigned as dower was of course in addition to these previous gifts.

Defendants point out that in the first year after the death of her husband, the period in question, plaintiff received $900 in rent from the laundry building; the $4,388 checking account; $291 per month in insurance installments; $6,797 as termination dividend; and probably $2,000 as the proceeds from the two small insurance policies, all of which would total approximately $17,000 in cash.

These cash items are referred to as evidence of the liquid character of a substantial part of plaintiff's property, making it readily available for her support and maintenance.

Plaintiff admits that she is the owner of a substantial estate and that a considerable part of it was in such form as to be available to her for her support and maintenance. But she contends that in determining the amount which should be allowed to the widow

by virtue of ORS 116.015 the court should not take into consideration the value of her capital assets, whether liquid or not, and whether derived from her husband before or as a result of his death. It is plaintiff's position that the allowance should be determined upon the basis of the following considerations:

"(a) The circumstances and condition in life of the widow, including her health;

"(b) Her necessary expenditures for her support;

"(c) The income derived by her from property owned by her before the death of her husband;

"(d) The income derived by her from property acquired by her upon or as a result of the death of her husband;

"(e) Other income received by her; and

"(f) The total assets of the estate."

Plaintiff's evidence establishes that her expenditures during the one year period in question were approximately $6,000 and that she received *income* during that period in the amount of $1,914.89. She claims the difference, or $4,085.11, as her rightful allowance. As we have already noted, the lower court allowed her nothing.

We are of the opinion that plaintiff's contention is sound and that the decree of the lower court must be reversed.

The *value* of the widow's separate property, however great and however derived, is not in itself a basis for determining the amount of her allowance; the *income* which that property yields is the significant factor. The purpose of ORS 116.015 and similar allowance statutes is "to tide over the widow and children for what might be assumed to be the average period of administering an estate." *In re Shepherd's*

*Estate,* 152 Or 15, 37, 41 P2d 444, 49 P2d 448 (1935). In order to carry out that purpose the widow must have available income to pay the reasonable costs of support. The fact that she has property which *may* produce income in the future or which can be encumbered in order to obtain a loan which could be used for support is immaterial.

■ In the absence of evidence to the contrary, it is to be presumed that gifts made by the decedent at or before his death were intended to be in addition to the statutory allowance. Atkinson on Wills (2d ed), p 131. This is the import of the language in *In re Shepherd's Estate,* supra, where the court said:

"* * * The will did not provide that the bequest to testator's wife should be in lieu of her statutory right to a widow's allowance during the first year of administration, and therefore it must be presumed that the testator had in mind, when making provision for her, that she would, if she desired, claim such allowance." 152 Or at page 37.

The reason for the foregoing presumption is well stated in *Newans v. Newans,* 79 Iowa 32, 44 NW 213 (1890) where it was held that the widow was entitled to the statutory allowance, even though she had property in her own right, if her income was insufficient for her support. The court said:

"* * * It is true she has property in her own right not derived from decedent, and that she has no children to support. But it is shown that the amount of her property is not large; that her income from it is small; and that, by reason of old age and disease, her expenses for the year in question will necessarily be larger than her income. We do no think she should be compelled to dispose of her property, and thereby destroy her means of support for the future, in order to meet her ex-

penses for the year in question, and thus save an appropriation by the court." 44 NW at page 213.

In the case of *Busby v. Busby,* 120 Iowa 536, 95 NW 191 (1903) it is made clear that the same rule applies where the widow's estate is substantial. In that case the court said:

> "The allowance to a widow for a year's support is not a mere charity, to be withheld because she has property of her own by which she could possibly keep herself and children during the first year of her widowhood. The statute, it is true, says the allowance shall be made if 'necessary' (Code, § 3314); but this language should have not only a reasonable, but liberal, construction to promote the purpose of its enactment. In the ordinary estate, even when of considerable value, the wife and young children of a deceased husband have during the first year special need of the assistance which this statute contemplates." 95 NW at page 192.

For other cases to the same effect see Annotation: Effect of election to take under will on right of widow to fixed statutory allowance, or allowance for support, 4 ALR 391 (1919); 140 ALR 1220 (1942).

Some of our cases, in which an allowance was made in spite of the fact that the widow had a substantial estate, may be regarded as impliedly adopting the foregoing view. *Aamoth v. Larson, Executor,* 197 Or 267, 253 P2d 268, 34 ALR2d 1051 (1953); *Ballard v. Mays,* 181 Or 7, 179 P2d 732 (1947).

■■ The trial court proceeded upon the assumption that since the separate property of the plaintiff was adequate for her support she was not entitled to the statutory allowance. This was error. Although the determination of the amount of the allowance is within the sound discretion of the trial court, its action is

subject to review for abuse of discretion. *In re Toland's Estate,* 98 Cal App2d 386, 220 P2d 16 (1950); *In re Crane's Estate,* 201 Okla 354, 206 P2d 726, 9 ALR2d 524 (1949); *In re Schwarzwalter's Estate,* 47 Wash2d 119, 286 P2d 699 (1955). See: *Aamoth v. Larson, Executor,* supra; *Ballard v. Mays,* supra; *In re Frizzell's Estate,* supra. We hold that there was an abuse of discretion in the present case and the decree of the lower court must be reversed.

■ Defendants argue that even though the plaintiff's claims are held to be well founded they were not timely presented and therefore they should be regarded as having been waived. This question is raised for the first time on appeal. Therefore, we shall not consider it. *Maker v. Wellin,* 214 Or 332, 327 P2d 793, 329 P2d 1114 (1958); *Semler v. Cook-Waite Laboratories, Inc.,* 203 Or 139, 278 P2d 150 (1954); *Porter Construction Co. v. Berry,* 136 Or 80, 298 P 179 (1931).

The decree of the lower court is reversed with directions to enter a decree in accordance with the prayer of the petition for dower from date of death granting to her one half the net income from the lands of which her husband died seised, and with directions to determine the amount which the plaintiff should receive as her statutory allowance.

Reversed and remanded.