Argued March 24, affirmed August 1, 1978

# BOWER TRUCKING AND WAREHOUSE CO., *Respondent,*
## *v.*
# MULTNOMAH COUNTY, *Appellant.*
## (No. A 76-09-12309, CA 9276)
### 582 P2d 439

Charles S. Evans, Chief Deputy County Counsel, Portland, argued the cause for appellant. With him on the briefs was John B. Leahy, County Counsel, Portland.

C. Clark Leone, Portland, argued the cause for respondent. With her on the brief was McLaughlin, Gunnar & Woods, Portland.

Before Schwab, Chief Judge, and Thornton, Tanzer* and Buttler, Judges.

THORNTON, J.

---

*Tanzer, J., did not participate in this decision.

## THORNTON, J.

This appeal involves a dispute between plaintiff, a regulated motor carrier, and defendant Multnomah County as to the application of two different statutes: the Oregon Motor Carriers Law, ORS ch 767, and the Oregon Public Contracts and Purchasing Law, ORS ch 279. The issue is which of these two statutes is controlling here.

Plaintiff was the successful bidder on a contract to haul and set up county voting equipment. Sometime thereafter, apparently as a result of an audit of plaintiff's books by the Oregon Public Utility Commissioner, plaintiff brought this action against defendant County to recover the difference between plaintiff's bid price and the amount claimed to be due according to the duly established state motor carrier tariff. The circuit court gave judgment for plaintiff.

Defendant County appeals contending that the trial court erred (1) in concluding that there is no conflict between the Motor Carriers Law and the Public Contracts and Purchasing Law; that defendant is subject to rate regulation powers of the Public Utility Commissioner when contracting for transportation services under the Public Contracts and Purchasing Law; (2) in giving judgment to plaintiff; and (3) in overruling defendant's demurrer to plaintiff's first cause of action.

The case was tried on stipulated facts, which may be summarized as follows:

In the spring and fall of 1974, Bower Moving & Storage Co., plaintiff's predecessor, provided to defendant moving and setup services of voting equipment for the primary and general elections. Bower, as the successful bidder, performed this service under contract with defendant. The bid amount, and consequently the contract amount, was for "approximately $19,950."

[ 429 ]

Subsequently an audit was made by the Public Utility Commissioner of Bower's services under this contract. The auditor determined that Bower should have charged defendant $30,628.43 under its tariff for the transportation services. Bower rendered an invoice to defendant for charges due under the tariff, but defendant paid only the contract amount.

Defendant County argues that the Public Contracts and Purchasing Law requires purchase by defendant of all work, materials and supplies costing $5,000 or more by public bid, with the award to the lowest responsible bidder; that the requirements of the two laws involved are in conflict; that the county is required to follow the bid law rather than the Motor Transportation Law; and that the bid law constitutes an exception to the Motor Transportation Law. Defendant also argues that plaintiff is estopped by having bid for the work involved.

Plaintiff answers the above contentions by arguing that the Motor Transportation Law controls because of (a) our decision in *Multnomah Co. v. Sabin,* 24 Or App 249, 545 P2d 615 (1976); and (b) that statutory construction and public policy both demonstrate that the Public Contracts and Purchasing Law is not an exception to nor in conflict with the Motor Transportation Law.

Neither statute by its terms contains any mention of the other, nor gives any indication of legislative intent on the issue before us.

Plaintiff asserts that *Multnomah Co. v. Sabin, supra,* is dispositive. It is true that *Sabin* involved essentially the same controversy. However, the issue of the apparent conflict between the two statutes was not properly before us and we accordingly declined to pass upon it.

In *Sabin* Multnomah County brought suit against a motor carrier and the Public Utility Commissioner to set aside an order of the commissioner imposing a civil

[ 430 ]

penalty on the county for aiding and abetting the violation by the carrier of a provision of the same Motor Carriers Law prohibiting a common carrier from charging rates at variance from those which have been established and filed with the commissioner. The circuit court reversed the imposition of a penalty on the ground that the county was not a "person" within the meaning of the penalty provisions of the Act.

The circuit court also went on to hold that the county was subject to rate regulation by the commissioner under the provisions of the Act when entering into contracts for motor transportation services. The county then appealed from the latter portion of the circuit court's order. We dismissed the appeal holding that the county could not appeal this portion of the order, stating that where a litigant has received by the final order he wished to attack all the relief available to him under his complaint, he may not appeal from such judgment.

We now turn to the issue on which we reserved decision in *Sabin.*

The Oregon Supreme Court said in *Woodburn v. Public Service Commission,* 82 Or 114, 161 P 391 (1916), and *Hillsboro v. Public Service Commission,* 97 Or 320, 187 P 617, 192 P 390 (1920), that rate regulation is delegated solely to the Public Utility Commissioner; that this authority is superior to municipal authority in the field; and that a municipality cannot exercise authority in this area that is in conflict with paramount state authority. While *Woodburn* and *Hillsboro* involved a different issue, *viz.,* a conflict between city ordinances and state powers under the Public Utility Law, we believe that the same principles apply here.

■ Having studied both statutes and the arguments and authorities cited by both sides, we conclude that the Motor Transportation Law is controlling here; that defendant County is not exempt from its provisions; and that plaintiff was entitled to recover as found by

[ 431 ]

the trial court. Political subdivisions subject to the provisions of the Public Contracts and Purchasing Law are not required to comply with this law before entering into contracts for supplies or services by public utilities whose rates are regulated pursuant to law. However, this is not to say that they may not do so if they choose.

■ While this is an issue of first impression in Oregon, the weight of authority elsewhere is that laws requiring advertising and public bidding on public contracts are not applicable to contracts for public utility services. *See,* 64 Am Jur 2d 899 et seq, Public Works and Contracts § 47 (1972); Annotation, 128 ALR 168 et seq (1940).

■ As to the defense of estoppel, this issue was raised for the first time on appeal and therefore will not be considered. *Booth v. First Nat'l Bank et al,* 220 Or 534, 349 P2d 840 (1960).

■ Lastly, the trial court did not err in denying defendant's demurrer to plaintiff's first cause of action, which raised the issue of the statute of limitations in view of the 1975 amendment to ORS 767.410(3).[1]

We conclude that this statute is not applicable to this case. Assuming arguendo that ORS 767.410(3) was intended to cover this type of action, the amendment was not enacted until 1975 (Oregon Laws 1975, ch 692). The entire chapter by its express terms was not to be effective until January 1, 1976. The contract in issue was made and performed in 1974. A legislative change in a statute of limitations acts prospectively only, unless a contrary legislative intent appears.

---

[1] ORS 767.410(3) provides:

"Any action against common carriers for recovery of overcharges or by common carriers for the collection of undercharges shall be commenced within two years from the time the cause of action accrued. As used in this subsection, overcharges or undercharges shall mean charges assessed for transportation service different from those applicable under the tariff lawfully in effect and on file with the commissioner."

*Fullerton v. Lamm,* 177 Or 655, 163 P2d 941, 165 P2d 63 (1946). Where an amendment to a statute of limitations enlarges the time within which an action must be brought, the courts have generally held that the new statute applies even though the cause of action arose prior to the change. Conversely, however, the courts have held that where there is a reduction or decrease in time, the change will not cut off rights which have accrued under the old law prior to the change. *See, Reynolds Metals v. Tax Com.,* 245 Or 156, 421 P2d 379 (1966); *Nichols v. Wilbur,* 256 Or 418, 473 P2d 1022 (1970).

The statute involved in *Fullerton v. Lamm, supra,* cited by defendant, contained an express savings clause making the change retroactive.

Therefore we conclude that ORS 12.080 providing for a six-year statute of limitations on contract actions controls.

Affirmed.

**BUTTLER, J.,** dissenting in part.

While I agree with the majority that the Motor Transportation Act is the controlling law, I think that defendant's demurrer to plaintiff's first cause of action should have been sustained on the ground that the statute of limitations had run.

Plaintiff's complaint contained two causes of action, the first of which related to services performed during a period ending June 17, 1974, for which plaintiff claimed it undercharged defendant the sum $4,168.74, with interest from June 17, 1974, until paid. Defendant's demurrer related only to the first cause of action, it being conceded that the second cause of action is not barred even if the statute of limitations enacted in 1975 is construed to apply retroactively.

Defendant contends that if plaintiff has a claim on its first cause of action, it accrued on or about June 17, 1974, and it is conceded that at that time the general

statute of limitations for contract actions was controlling. ORS 12.080. However, in 1975, the legislature amended ORS chapter 767, and added subsection (3) to ORS 767.410,[1] as follows:

"Any action against common carriers for recovery of overcharges or by common carriers for the collection of undercharges shall be commenced within two years from the time the cause of action accrued. As used in this subsection, overcharges or undercharges shall mean charges assessed for transportation service different from those applicable under the tariff lawfully in effect and on file with the commissioner."

This period of limitations is included in the section of the act which makes it unlawful for a carrier to "charge, demand, collect or receive a greater, less, or different remuneration for the transportation * * * of property * * * than the rates which have been legally established and filed with the commissioner." The amendments were adopted July 8, 1975, and filed with the Secretary of State on that day; however, the entire chapter, by express language, did not become effective until January 1, 1976. Since plaintiff's complaint was not filed until September 7, 1976, the period of limitations will have run if the new limitation period is held to be applicable.

I agree with the majority's statement of the general rule that a change in a statute of limitations acts prospectively only, unless a contrary legislative intention appears. However, I think it is reasonably clear that the legislature intended that the new period of limitations be applicable to claims for undercharges which had accrued prior to the passage of the act, but which had not expired under the then existing period of limitations. In this case, the first cause of action accrued in July, 1974, and on July 8, 1975, when the new period of limitations was enacted, plaintiff had reasonable notice that it must assert its claim prior to

---

[1] This section was amended in Oregon Laws 1977, chapter 253, section 20, page 192.

June 17, 1976. The legislature intentionally allowed approximately six months' notice to any preexisting claimant that all claims which had accrued prior to January 1, 1974, but were not then barred, would have to be asserted on or before January 1, 1976, or be barred.

I think such a delay in the effective date of the new period of limitations manifests an intention of the legislature that the new period of limitations be applied retroactively as well as prospectively. *See Fullerton v. Lamm,* 177 Or 655, 163 P2d 941, 165 P2d 63 (1946); *McLaughlin v. Hoover,* 1 Or 31 (1853).

In addition, and perhaps more importantly, this case is not the ordinary situation where the plaintiff is asserting a right under a contract. To the contrary, the contract between plaintiff and defendant was for a stated amount, which plaintiff has been paid. It is only by virtue of an audit by the Public Utilities Commissioner, which disclosed that plaintiff had undercharged defendant and had advised plaintiff that it must collect the undercharge, that this action was commenced. If it were not for the overriding public policy, plaintiff would be bound by the contract price. In other words, we are not dealing with a private right in any normal sense, but with an *obligation* imposed by public policy. Since it is the public policy which is being enforced (the maintaining of tariff rates), the legislature may shorten the time within which even a pre-existing public right must be asserted, or be forever barred. The legislature has done that in this case.

Accordingly, I would hold that defendant's demurrer to plaintiff's first cause of action should be sustained.